BROWN, ADMINISTRATRIX, v. AMERICAN STEEL AND WIRE COMPANY.

[No. 6,383.   Filed April 23, 1909.]

1. APPEAL.—*Bills of Exceptions.—Time for Filing.—Common Law.* —At the common law bills of exceptions had to be filed at the term at which the alleged errors were committed.   p. 564.

2. APPEAL.—*Bills of Exceptions.—Filing.—Time for.—Extensions.*— Under §660 Burns 1908, §629 R. S. 1881, trial courts are authorized to grant time beyond the term, within which to file bills of exceptions, and under §661 Burns 1908, Acts 1905, p. 45, such time may in certain cases be extended, where application is made before the expiration of the time first granted.   p. 564.

3. APPEAL.—*Bills of Exceptions.—Time for Filing.—When to be Granted.—New Trial.—Entry.*—Time beyond the term for the filing of a bill of exceptions on the overruling of a motion for a new trial must be asked at the time of such overruling, and such fact must be shown by an order-book entry.   p. 564.

4. APPEAL.—*Bills of Exceptions.—Time for Filing.—Extensions.*— *Jurisdiction.*—Under §661 Burns 1908, Acts 1905, p. 45, authorizing the trial court under certain circumstances to grant an extension of time for the filing of bills of exceptions, but one extension can be granted, the court having no jurisdiction, even by consent, to extend twice.   p. 565.

5. APPEAL.—*Bills of Exceptions.—Presentation to Judge.—Filing.*— *How Shown.*—A bill of exceptions presented to the judge within the time granted is sufficient, although it was not actually filed until after the expiration of the granted time.   p. 566.

6. MASTER AND SERVANT.—*Factory Act.—Unguarded Cogwheels.*— *Negligence.*—The failure to guard a cogwheel constitutes negligence per se, and for any injuries of which such act is the decisive cause, the master is liable.   p. 566.

7. NEGLIGENCE.—*Proximate Cause.*—That cause of an injury is deemed proximate which is active, continuing, unbroken by any

Brown *v.* American Steel, etc., Co.—43 Ind. App. 560.

intervening responsible agent, and which is the probable and natural source of the injury complained of. p. 566.

8.  NEGLIGENCE.—*Proximate Cause.—Question for Jury.*—What is the proximate cause of an injury may, under the evidence, be a question of fact for the jury, or a question of law for the court. p. 567.

9.  TRIAL.—*Directing Verdict.—Negligence.*—A verdict should be directed in a negligence case only where there is an entire absence of evidence tending to prove some essential fact therein.  pp. 567, 569, 573.

10.  MASTER AND SERVANT.—*Factory Act.—Unguarded Cogwheels. —Injuries.—Suicide.—Proximate Cause.*—The master is not liable for the death of a servant who was severely injured by an unguarded cogwheel, the injury resulting in the servant's taking his life knowingly, the court being authorized to say as a matter of law that the negligent act of the master did not constitute the decisive cause of such death.  p. 568.

11.  ACTION.—*Survival.—Statutes.—Negligence.*—Under §285 Burns 1908, Acts 1899, p. 405, actions for the death of a person can be maintained only where such death was caused by the "wrongful act or omission of another."  p. 569.

12.  NEGLIGENCE.—*Proximate Cause.—Intervening Agent.—Probable Result.*—An intervening responsible agent cuts off the line of causation in negligence, except where such agent's intervention could be foreseen as the natural or probable result of the negligent act. p. 572.

13.  TRIAL.—*Burden of Proof.—Negligence.—Proximate Cause.*— The burden of proving that plaintiff's injuries were proximately caused by defendant's negligence is upon plaintiff.  p. 572.

From Tipton Circuit Court; *J. F. Elliott,* Judge.

Action by Minnie C. Brown, as administratrix of the estate of William Cruse, deceased, against the American Steel and Wire Company.  From a judgment for defendant, plaintiff appeals.  *Affirmed.*

*Charles O. Roemler, H. O. Chamberlain, John M. Bailey, W. R. Oglebay* and *F. C. Oglebay,* for appellant.

*Robert B. Beauchamp, Marcellus A. Chipman, Sanford M. Keltner, Edgar E. Hendee* and *Gilbert R. Call,* for appellee.

MYERS, J.—Appellant brought this action against appellee to recover damages for the alleged negligent killing of Will-

iam Cruse, appellant's intestate. From the amended complaint, which was in one paragraph, it appears that on January 27, 1903, appellee was engaged in the manufacture of nails, and other metal goods, at Anderson, Indiana, and on that day said decedent was in its employ as a helper in and about one of its nail machines, the cogs, gearing, belting, etc., of which machine appellee had negligently and carelessly failed and omitted to guard; that, while said machine was being operated said decedent was caught by said unguarded cogs, etc., and thereby greatly and seriously injured; "that such described injuries so received by said decedent, through and by the carelessness and negligence of the defendant in the manner aforesaid, did cause and produce the death of said William Cruse on or about October 30, 1903." The sufficiency of the complaint is not before us.

Appellee answered the complaint in two paragraphs, one in denial, the other averring a compromise and settlement with the decedent for all claims by reason of the injuries so sustained by him. The contract of settlement was in writing, and was made a part of the answer. To said affirmative paragraph of answer a reply in eight paragraphs was filed. The first was a denial. The fifth and sixth were withdrawn. The second paragraph was a partial reply, and related to that part of the answer averring the payment of $500 for care and treatment of the decedent. The other paragraphs alleged a tender and offer to return to appellee the money paid by it to the decedent on account of the alleged compromise set up in the answer, and also alleging that, at the time of said compromise and settlement, said decedent was, as appellee well knew, a person of unsound mind, and incapable of understanding and knowing the nature and consequence of the pretended settlement. No question as to any one of these paragraphs is presented. The cause was twice tried. The first trial resulted in a verdict in favor of appellant. On November 28, 1905, appellee's motion for a new trial was sustained. On December 7, 1905,

at the request of appellant, ninety days were given in which to file her bill of exceptions. Thereafter such proceedings were had in said cause whereby a second trial was had, and at the close of appellant's evidence the court instructed the jury to return a verdict for the appellee. The jury returned a verdict as directed by the court, and thereupon the appellant filed her motion for a new trial, which on March 6, 1906, was overruled, and 150 days were given in which to file her bill of exceptions, and judgment was rendered in favor of appellee.

The record purports to contain three bills of exceptions. The first is said to include a copy of all the pleadings and order-book entries up to and including the granting of appellee's motion for a new trial. The second bill is said to include all of the evidence given at the first trial. The third includes the evidence introduced and rulings of the court at the second trial.

Appellee insists that neither the second nor the third bill of exceptions is properly a part of the record.

Again looking to the record, we find that on February 22, 1906, and during the time first given, at the request of appellant, the time for filing bill of exceptions number two was extended to June 10, 1906. On May 24, 1906, and within the limit of the first extension, upon the petition of appellant, the time for filing said bill of exceptions number two was extended until July 25, 1906. On July 24, bills of exceptions numbered two and three were presented to the trial judge for settlement and signature, and the same were taken under advisement until October 11, 1906, when they were signed and ordered made a part of the record, and both were filed with the clerk of the Tipton Circuit Court on October 12, 1906. The dates and action of the judge relative to said bills appear from the order-book entries, except the date when said bills were presented to the trial judge, and that date is stated in each of the bills.

Under the common law a bill of exceptions had to be filed during the term at which the alleged erroneous rulings were made. *Kirby* v. *Bowland* (1879), 69 Ind. 290; *Lengelsen* v. *McGregor* (1904), 162 Ind. 258. But by statute (§656 Burns 1908, §626 R. S. 1881), the trial court had the power to give time within which to reduce exceptions to writing, and the party so objecting, under §660 Burns 1908, §629 R. S. 1881, within the time thus allowed, may "present to the judge a proper bill of exceptions, which, if true, he shall promptly sign and cause it to be filed in the cause; * * * and delay of the judge in signing and filing the same shall not deprive the party objecting of the benefit thereof. The date of the presentation shall be stated in the bill of exceptions, and the entry shall show the time granted, if beyond the term, for presenting the same." Section 661 Burns 1908, Acts 1905, p. 45, makes provision for the extension of time in which to file such bills, where such extension is made necessary on account of the inability or failure of the court reporter to prepare and furnish a transcrpt of the evidence, "provided, such application for such extension must be made prior to the expiration of the time first given." It is clear under these sections of our statute, that time beyond the term for filing a bill of exceptions bringing into the record the rulings of the court for review, which are reasons for a new trial, may be had only by special leave of the court given on the day the ruling on the motion for a new trial is made, and the fact that time was given must be made to appear by an order-book entry. *Citizens St. R. Co.* v. *Marvil* (1903), 161 Ind. 506; *Theobald* v. *Clapp* (1909), *ante*, 191. With reference to bill number two, it will be seen that it was nine days after the court had sustained appellee's motion for a new trial before appellant asked, and the court made the order allowing her, ninety days in which to prepare and present to the judge her bill of exceptions.

It further appears that this bill was not presented to 4. the judge within the first extension of time, but was presented within the time covered by the second extension. The language of the statute contemplates but one extension, and for that purpose parties are bound to take notice of an application therefor. When the judge extended the time to June 10, his authority in that particular ended, and any order by him made thereafter, under the facts in this case, was without authority and of no effect. *Lengelsen* v. *McGregor, supra; Citizens St. R. Co.* v. *Marvil, supra; Theobald* v. *Clapp, supra; Nichols* v. *Central Trust Co.* (1909), *ante,* 64.

It has been suggested that the order-book entry of the filing of the application by the appellant for the second extension, and the order of the court granting such extension, show that the parties by counsel were present at the time the order was made, and no objection or exception to the action of the court was taken, and for that reason appellee waived its right thereafter to object to the court's action in the premises. We cannot concur in this conclusion. Such an order-book entry, at best, could not be construed as showing more than a mere consent on the part of the appellee to the making of the order. The validity of the order depended upon the power of the judge to make it, and not upon the consent of the parties. The statute, as we have said, has reference to an extension of time based upon an application made to the judge within "the time first given." The principle applicable here is not unlike that enforced in *Lengelsen* v. *McGregor, supra,* where it is said: "After the expiration of the time allowed, the judge loses jurisdiction over the subject-matter, and cannot be reclothed with it by agreement of the parties." Bill number two is not properly a part of the record.

Bill of exceptions number three was presented to the judge for settlement within the time first given, and while it

was not signed and filed by the judge until after that time had expired, such failure was not because of any fault chargeable to appellant. Having done all that she was required to do under the statute, her right to have this bill considered a part of the record will not be denied because of the failure of the court to sign and file it within the time designated for that purpose. *Malott* v. *Central Trust Co.* (1907), 168 Ind. 428; *Warner* v. *Marshall* (1906), 166 Ind. 88; *Brower* v. *Ream* (1896), 15 Ind. App. 51.

It is assigned that the court erred in overruling appellant's motion for a new trial. The reasons in support of the motion, and not waived, are that the verdict of the jury is not sustained by sufficient evidence; that it is contrary to law; and that the court erred in instructing the jury to return a verdict for appellee.

As the record comes to us, and as argued by counsel, the question is: Was the alleged negligence of appellee the proximate cause of decedent's death, and is the evidence such as to make the question one of law?

Appellant's theory is stated as follows: "That the decedent received certain injuries on account of appellee's negligence; that these injuries produced insanity, and that this insanity produced his death by suicide, thus making the negligence of appellee the proximate cause of death."

The failure of appellee to guard the machinery mentioned was an omission of a statutory duty it owed to the decedent, and such omission, as a rule, constitutes negligence per se. *Davis* v. *Mercer Lumber Co.* (1905), 164 Ind. 413. And while this is true, yet appellee would be responsible only for such injuries as were the actual sequence of such negligence, unbroken by any intervening responsible agent, or, in other words, it must appear that such negligence was the responsible cause, the essential factor, which caused the death of appellant's decedent. *Davis* v. *Mercer Lumber Co., supra; Ohio, etc., R. Co.* v. *Trowbridge* (1890), 126 Ind. 391; *Flint & Walling*

*Mfg. Co.* v. *Beckett* (1906), 167 Ind. 491, 12 L. R. A. (N. S.) 924.

In *Lake Erie, etc., R. Co.* v. *Charman* (1903), 161 Ind. 95, 103, it is said: "And that cause will be held proximate which is shown to be active, operative, and continuing, and the probable and natural source of the injury;. that is to say, where the sequence or injury complained of under the circumstances of the case is such as might and ought to have been foreseen by a person of ordinary sagacity as a probable result of the thing done, it will be deemed the responsible or proximate cause."

In *Davis* v. *Mercer Lumber Co., supra,* it was held that "the proximate cause of an injury or wrong in a case based on negligence, as previously said, is an essential element therein, and in like manner as any other essential fact may, under the evidence, become a matter or question of law for the court, or one purely of fact for the determination of the jury." *Terre Haute, etc., R. Co.* v. *Buck* (1884), 96 Ind. 346; 4 Thompson, Negligence (2d ed.), §3860; *Louisville, etc., R. Co.* v. *Nitsche* (1890), 126 Ind. 229, 236, 9 L. R. A. 750, 22 Am. St. 582. In the case of *Davis* v. *Mercer Lumber Co., supra,* it was also held to be the "settled rule in this State that the right of the court to direct a verdict, as it did in this case, can only be upheld where, after a consideration of all the evidence most favorable to the plaintiff, together with all the reasonable and legitimate inferences which a jury might have drawn therefrom, it can be said that the evidence is clearly insufficient to establish one or more facts essential to the plaintiff's right of action." *Wolfe* v. *McMillan* (1889), 117 Ind. 587; *Westfall* v. *Wait* (1905), 165 Ind. 353; *Jacobs* v. *Jolley* (1902), 29 Ind. App. 25; *Galbraith* v. *Holmes* (1896), 15 Ind. App. 34. So it may be said that where the facts are undisputed the question of proximate or intervening cause is for the court. *P. H. & F. M. Roots Co.* v. *Meeker* (1905), 165 Ind. 132,

In the case at bar the facts are undisputed, and from which we take those most favorable to appellant. On January 27, 1903, William Cruse, the decedent, was in the employ of appellee as a helper about a certain nail machine used by appellee in its manufacturing plant. As a part of said machine were certain unguarded cogs, which could have been guarded without interfering with the practical usefulness of the machine. On said day decedent, while working about said machine, was caught in said unguarded cogs. His right arm, from near his wrist up to a little below his shoulder, was severely cut and mashed. He received a cut about three inches long, of triangular shape, on top of his head, a cut on the side of his head near his temple, and a cut in his back just below the right shoulder, about three inches wide and four inches long, and deep enough to expose a rib and his spinal column. His hips were severely bruised and injured. Immediately after the accident he was taken to a hospital, where his wounds were dressed by surgeons, and where he remained until the latter part of August. From the hospital he went to a private boarding house in Anderson, and about the middle of September he went to the home of his father at Nora, Indiana, and remained there until the day of his death, October 31. For five years continuously and immediately prior to said accident the decedent was strong and healthy, and from the time of the accident until his death was physically weak and unable to do any work. It appears that on the same day, and shortly after the accident, he became unconscious, and remained in that condition for several hours; that at times during the two weeks next following the day of the injury he would become insensible, and did not recognize his son. At intervals thereafter, until he died, he was unable to recognize members of his own family. After the accident, and after he had gained consciousness, and when in his best physical and mental condition, he would continually complain of pain in his head; said that the side of

his head was heavy, and at times complained of being dizzy. At times he complained about not knowing what he was doing. He was melancholy, and his talk was incoherent. Occasionally he would start a sentence directed to one subject and close it with reference to some other subject. He was constantly rubbing his head. He frequently could not remember the names of his children. The undisputed evidence is that at the time of his death he was a person of unsound mind. It was agreed by the parties "that on October 31, 1903, in the evening of that day, Mr. Cruse left his father's home in Nora, Marion county, Indiana, and was not heard of or seen for three weeks from that date, at which time he was found near Nora in a cornfield, lying between two corn rows, with his coat and vest removed and lying close to him, with his own pocket knife open, and in or near to his hand, and with his throat cut, severing the jugular vein, with some three cuts in the throat. His property, a watch and some money, was intact in his pocket, and he was dead. It is further agreed that he took his own life, and died from the effects of the knife wounds, self-inflicted."

Appellant's authority to bring and maintain this action rests solely upon the statute (§285 Burns 1908, Acts 1899; p. 405), which provides: "When the death of one is caused by the wrongful act or omission of another, the personal representatives of the former may maintain an action therefor against the latter, if the former might have maintained an action, had he or she (as the case may be) lived, against the latter for an injury for the same act or omission." Under this statute the death must have been "caused by the wrongful act or omission of another."

The case of *Scheffer* v. *Washington City, etc., R. Co.* (1881), 105 U. S. 249, 26 L. Ed. 1070, was an action for damages for injuries, growing out of a collision between two railroad trains on December 7, 1874, whereby Scheffer, a passenger on one of the trains, was injured about his head, face, neck,

back and spine, and by reason of such injuries he became sick, and disordered in his mind, body, brain and spine, and by means whereof phantasms, illusions and forebodings of unendurable evils came upon him, thereby prostrating all of his reasoning powers, and inducing him, on August 8, 1875, to take his life in an effort to avoid such phantasms, illusions and forebodings. Held, that the proximate cause of the death of Scheffer was his own act of self-destruction. The court said: ''The argument is not sound which seeks to trace this immediate cause of the death through the previous stages of mental aberration, physical suffering, and eight months' disease and medical treatment to the original accident on the railroad. Such a course of possible or even logical argument would lead back to that 'great first cause least understood,' in which the train of all causation ends. The suicide of Scheffer was not a result naturally and reasonably to be expected from the injury received on the train. It was not the natural and probable consequence, and could not have been foreseen in the light of the circumstances attending the negligence of the officers in charge of the train. His insanity, as a cause of his final destruction, was as little the natural or probable result of the negligence of the railway officials as his suicide, and each of these are casual or unexpected causes, intervening between the act which injured him and his death.''

In *Daniels* v. *New York, etc., R. Co.* (1903), 183 Mass. 393, 67 N. E. 424, 62 L. R. A. 751, was an action to recover damages for the death of plaintiff's decedent, caused by a collision with an engine and cars of the defendant at a grade crossing. The facts, as stated by the court, are that he received a blow on the head and other injuries at the time of the accident, August 12, 1899, and he died October 3. His mind was clear for several weeks after the accident, but after that he showed symptoms of insomnia and restlessness, and began to suffer from severe attacks of headache, was melancholy, and at times delirious. The autopsy after

his death showed circumscribed meningitis, which produced mental aberration. "On October 3 he was left alone on his bed in a room from which the door opened into the dining-room. After a time it was found closed, and locked from the bed room on the inside. His wife entered the room through a window, and he was discovered lying on his bed, with a napkin, which had been left on a tray, used for bringing his food, twisted tightly around his neck and held tightly in his hands so as to produce strangulation. He was not then dead, but died soon afterwards. Experts testified that he was probably insane when he took his life." The question in that case was, as it is in the case before us, Did the decedent die from the effects of the accident, within the meaning of the statute?

While the court in the case just cited was of the opinion that the jury was well warranted in finding that the mental condition of the decedent was caused by the collision, yet the question was whether an essential condition precedent was the active, efficient, proximate cause of a subsequent event, or was only a producer of conditions which opened the door of another cause which directly and actively produced the result. Was the death "a remote consequence of the collision, or was it an effect actively produced by it?" After considering these questions as applied to insurance contracts providing against liability in case of suicide or death by the insured's own hand, it was held that the principle invoked, as applicable to such contracts, did not apply to actions given by statute for the death of one caused by the wrongful act or omission of another. In cases resting on the statute there must appear to be something more than an unsound mind, though it be caused by mental disease as a sequence of the injury inflicted by reason of the negligent act or omission of the defendant. If the decedent at the time of taking his life had mind enough to know what he wanted to do, and how to do it, the line of causation from the accident to the death would be broken by the act of

suicide, and the latter would be the proximate cause of his death. From the cases bearing upon the subject now being considered the rule seems to be that an action under the statute may be maintained when the death is self-inflicted, only where it is the result of an uncontrollable influence, or is accomplished in delirium or frenzy, caused by the defendant's negligent act or omission, and without conscious volition of a purpose to take life; for then the act would be that of an irresponsible agent. *Daniels* v. *New York, etc., R. Co.*, *supra*; *Scheffer* v. *Washington City, etc., R. Co.*, *supra*; *Goodlander Mill Co.* v. *Standard Oil Co.* (1894), 63 Fed. 400, 405, 11 C. C. A. 253, 27 L. R. A. 583; *Chicago, etc., R. Co.* v. *Elliott* (1893), 55 Fed. 949, 951, 5 C. C. A. 347, 20 L. R. A. 582; *Ronker* v. *St. John* (1900), 21 Ohio C. C. 39; *Maguire* v. *Sheehan* (1902), 117 Fed. 819, 54 C. C. A. 642, 59 L. R. A. 496. While the rule is general that an intervening responsible agent cuts off the line of causation from the original negligence, yet we are not unmindful of 12. "the qualification, that if the intervening act is such as might reasonably have been foreseen or anticipated as the natural and probable result of the original negligence, the original negligence will, notwithstanding such intervening act, be regarded as the proximate cause of the injury." *Nickey* v. *Steuder* (1905), 164 Ind. 189. The burden was on appellant to prove that decedent's death was caused 13. by the neglect of appellee to guard the cogwheels. It is not enough to show negligence and the injury, but, in addition, appellant must also show that appellee's negligence proximately caused Cruse's death. The decedent's right to damage, had he lived, was a common-law right, limited to the damage sustained, attributable to the negligence of appellee. Appellant's right to recover, being statutory, depends upon whether her decedent could have maintained an action, had he lived, against appellee for a self-inflicted injury, as the active, operative, continuing, and the probable and natural sequence of the original injury.

In actions of this character the evidence must be such as to warrant the jury in finding that the decedent in taking his life acted "without volition under an uncontrollable impulse, or that he did not understand the physical nature of his act." *Daniels* v. *New York, etc., R. Co., supra.* Turning again to the record in this case, we find no evidence as to the decedent's strength of mind during a few weeks immediately prior to his death, but, assuming that his improved condition in that respect a few weeks before the day of the suicide continued, taken in connection with the agreed facts heretofore set out in this opinion, instead of showing a want of conscious volition, strongly indicates that the decedent had a mind capable of conceiving a purpose of taking his life, as well as a knowledge of the means which would certainly carry his purpose into effect. This conclusion, from the evidence, leaves an essential fact to support a verdict for plaintiff unsustained by the evidence, and, this being true, the trial court did not err in directing a verdict for the defendant. *Louisville, etc., R. Co.* v. *Nitsche, supra; Cole* v. *German Sav., etc. Soc.* (1903), 124 Fed. 113, 122, 59 C. C. A. 593, 63 L. R. A. 416.

Judgment affirmed.