MARY LONG, ADMINISTRATRIX, APPELLANT, V. OMAHA & COUNCIL BLUFFS STREET RAILWAY COMPANY, APPELLEE.

FILED APRIL 11, 1922. No. 21655.

1. **Negligence:** QUESTION FOR COURT. Where the facts are undisputed, the question of proximate or intervening cause is for the court.

2. **Death:** PROXIMATE CAUSE. The liability of a street railway company under sections 1428, 1429, Rev. St. 1913, commonly called "Lord Campbell's Act," for the death by suicide of a person made insane by a collision between an automobile in which he was riding and defendant's street car, exists only when the death is the result of an uncontrollable impulse or is accomplished in delirium or frenzy caused by the collision, without conscious volition to produce death. A voluntary act of suicide of an insane person, knowing the purpose and physical effect of his act, is such a new and independent agency as to break the line of causation between the collision and the death and prevent a recovery under said statute.

3. **Record** examined, and *held* that the trial court did not err in sustaining defendant's demurrer and dismissing the case.

APPEAL from the district court for Douglas county: WILLIAM A. REDICK, JUDGE. *Affirmed.*

*John O. Yeiser* and *John O. Yeiser, Jr.,* for appellant.

*John L. Webster, contra.*

Heard before LETTON, DEAN and DAY, JJ., CLEMENTS (E. J.) and WELCH, District Judges.

CLEMENTS, District Judge.

This is an action brought under the provisions of sections 1428, 1429, Rev. St. 1913, being the so-called "Lord Campbell's Act," to recover damages sustained by the widow and children of Russell James Long, whose death, it is alleged, was caused by the wrongful act of the defendant. After a jury was impaneled and the opening statements of counsel were made, defendant obtained leave to withdraw its answer and to interpose a demurrer *ore tenus* to the petition and the evidence as stated by counsel for plaintiff, which statement appears in the record. Said demurrer was sustained and the case dismissed. Plaintiff appeals.

This method of summarily disposing of a case upon the opening statement of counsel seems to be a common practice in the federal courts. It is not authorized by any express provision of the Nebraska statute and has not been passed upon by any decision of this court, so far as we are advised. However, counsel for plaintiff in his brief and oral argument said that his opening statement contained all the facts which plaintiff could prove; that he wanted his client to be bound thereby; and, as both parties consent to the determination of the cause by the method adopted by the trial court, we shall consider and determine the case as if evidence had been introduced tending to prove all statements made to the jury by plaintiff's counsel and the demurrer had been interposed thereto.

In his opening statement counsel first read plaintiff's petition, in which it is alleged that on or about August 6, 1918, a collision occurred between one of defendant's street cars and an automobile in which Russell James Long was riding, which was caused by the negligence of defendant; that Long was thrown out of said automobile and thereby injured in his spine, brain and back, and suffered a great

physical and nervous shock, impairing his mentality and rendering him insane, and, while insane from said injuries, said Long committed suicide on the 23d day of August, 1918, by purchasing a shotgun shell, saying he wanted to try it in his gun, and a few minutes later shot himself in the head; that said Long was 22 years' old and left surviving him a widow, 21 years' old, and two children, one three years' and the other seven months' old. Counsel for plaintiff in his opening statement to the jury stated that the evidence will show that Mr. Long was suffering from some mental affection before the collision in question; that he would have moody spells, reading and studying over letters an unreasonable length of time; that he did many little peculiar things; that he had a number of things which shocked him and caused worry; that sometime before the accident in question his brother-in-law had employed Long and sent him out on a farm and did not give him sufficient money to run the affair; that the brother-in-law had criticised him, and on the day of his death, or perhaps the day before, he had received a letter from said brother-in-law in which he called attention to the fact that he had sent Long $150 with which to get a mower, and that he would have the sheriff after him; that about that time Long went to a hardware store and asked for a shotgun shell, took it home, went into the house, and at that time he was found dead with the top of his head blown off; that Long's father was below normal in mentality and the son was about like his father; that after the injury he was lame and complained of a headache, which he had not complained of before; that he was nervous, and that in a little less than three weeks after the accident this suicide occurred, with no other cause contributing to it except said letter from his brother-in-law; that plaintiff expected to present expert doctors who would testify that it is their opinion that Long committed suicide by reason of the injury to the spinal cord and the shock to his system under the conditions shown by the evidence as stated above. By its demurrer defendant admitted the truth of all allega-

tions of fact in the petition well pleaded, and of all statements of competent evidence made by counsel for plaintiff in his opening statement, and in the consideration of the case the truth of same will be assumed by us.

In plaintiff's brief it is said: "There is but one question in this case, and that is: Was the negligence the proximate cause of the suicide?" The question to be determined may properly be stated in somewhat different language as follows: "Was the wrongful act of the defendant the proximate cause of the death of Mr. Long?" The trial court answered this question in the negative, and, as authority for so doing, relied on the decision of the supreme court of the United States in *Scheffer v. Railroad Co.*, 105 U. S. 249, and that of the supreme court of Massachusetts in *Daniels v. New York, N. H. & H. R. Co.*, 183 Mass. 393.

The *Scheffer* case was an action brought under the provisions of the statute of Virginia, which, like that of Nebraska, gives the right of recovery for damages sustained by death caused by the wrongful act of another, in which the executors of Charles Scheffer, deceased, sought to recover of the defendant, a railroad company, damages for his death, which they alleged resulted from negligence of the company while he was a passenger on its road. The declaration therein, after alleging the negligence of the company causing a collision between trains on December 7, 1874, then alleged that by said collision Scheffer was cut, bruised and seriously injured about his head, face, neck, back and spine, by reason of which he became sick and disordered in mind and body, had insane delusions which prostrated all of his reasoning powers and induced him to, and he did, on August 8, 1875, commit suicide; and that his death was caused by the negligence of defendant as aforesaid. A demurrer to the declaration was sustained by the trial court, and, to reverse the judgment of dismissal rendered thereon, the case was taken to the United States supreme court on error, where said judgment was affirmed. In the opinion which was delivered by Mr. Justice Miller, the case of *Milwaukee & St. P. R. Co. v. Kellogg*, 94 U. S.

469, is cited and quoted from.  In that case the court commented upon the difficulty of ascertaining, in each case, the line between the proximate and remote causes of a wrong for which a recovery is sought, and said: "It is admitted, that the rule is difficult of application.  But it is generally held that, in order to warrant a finding that negligence, or an act not amounting to wanton wrong, is the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of the negligence or wrongful act, and that it ought to have been foreseen in the light of the attending circumstances."  In the opinion the court said: "The proximate cause of the death of Scheffer was his own act of self-destruction;" that "the suicide of Scheffer was not a result naturally and reasonably to be expected from the injury received on the train.  It was not the natural and probable consequence, and could not have been foreseen in the light of the circumstances attending the negligence of the officers in charge of the train.  His insanity, as a cause of his final destruction, was as little the natural or probable result of the negligence of the railway officials, as his suicide, and each of these are casual or unexpected causes, intervening between the act which injured him, and his death."

The *Scheffer* case was cited and followed by the supreme court of Massachusetts in *Daniels v. New York, N. H. & H. R. Co.,* 183 Mass, 393.  In that case, which was brought under the statute of Massachusetts giving a right of action for death by wrongful act, a party was injured in a collision between a wagon, in which he was riding, and defendant's locomotive at a grade crossing.  He received a blow on the head at the time of the accident, which occurred on August 12, 1899, which caused insomnia, headache, melancholia, and mental aberration.  On October 3 following the accident he was left alone in his bed in a room, the door of which, opening into the dining-room, was left open.  After a time this door was found closed and locked from the bed-room side.  An entrance to the bedroom was made through a window, and he was discovered

lying on his bed with a napkin twisted tightly around his neck and held in his hands so as to produce strangulation, from which he died. Experts testified that he was probably insane when he took his life. In the opinion it is said:

"The question is whether his life was lost by the collision within the meaning of the statute. The jury were well warranted in finding that his mental condition was caused by the collision. If his mental condition had remained normal, probably he would not have died in this way. We are thus brought to the consideration of the question which is often very difficult to decide, whether an essential condition precedent, is the active, efficient, proximate cause of a subsequent event, or is only a producer of conditions which open the door to another cause which directly and actively produces the result. Was death in this case a remote consequence of the collision, or was it an effect actively produced by it?"

In the second paragraph of the syllabus the governing rule is stated as follows: "The liability of a railroad company under Pub. St. c. 112, sec. 213, for the death by suicide of a person made insane by a collision at a railroad crossing exists only when the death is the result of an uncontrollable impulse or is accomplished in delirium or frenzy caused by the collision, without conscious volition to produce death. A voluntary act of suicide of the insane person, knowing the purpose and physical effect of his act, is such a new and independent agency as to break the line of causation between the collision and the death and prevent a recovery under the act." The conclusion of said opinion is as follows: "The burden of proof was on the plaintiff to show that the death was caused by the collision. All the evidence tended to show that the deceased, with deliberate purpose, planned to take his own life, that he closed the door and locked it with a view to exclude others and prevent interruption, and that he then took the napkin and used it effectively to strangle himself. All this points to an understanding of the physical nature and effect of his act, and to a wilful and intelligent purpose

to accomplish it. That he was insane, so as to be free from moral responsibility, is not enough to make the defendant liable. We are unable to discover any evidence that he was acting without volition, under an uncontrollable impulse, or that he did not understand the physical nature of his act. In the absence of any affirmative evidence for the plaintiff on this point, the jury should have been instructed to render a verdict for the defendant."

*Brown v. American Steel & Wire Co.*, 43 Ind. App. 560, 88 N. E. 80, was an action brought under the Indiana statute giving a right of action for death by wrongful act. In that case William Cruse was severely injured in his head, arm, back, and hip by being caught in the cog-gear of defendant's nail machine, which was, through the negligence of defendant, left uncovered, from which injuries he became and was, at the time of his death, which occurred nine months later, of unsound mind; that while in that condition he went into a corn field and committed suicide by cutting his throat with his pocket knife. In the opinion the court cited and quoted from the *Scheffer* and *Daniels* cases, *supra*, and then said: "From the cases bearing upon the subject now being considered the rule seems to be that an action under the statute may be maintained when the death is self-inflicted, only where it is the result of an uncontrollable influence, or is accomplished in delirium or frenzy, caused by the defendant's negligent act or omission, and without conscious volition of a purpose to take life; for then the act would be that of an irresponsible agent. * * * While the rule is general that an intervening responsible agent cuts off the line of causation from the original negligence, yet we are not unmindful of 'the qualification, that, if the intervening act is such as might reasonably have been foreseen or anticipated as the natural and probable result of the original negligence, the original negligence will, notwithstanding such intervening act, be regarded as the proximate cause of the injury.' *Nickey v. Steuder*, 164 Ind. 189. The burden was on appellant to prove that decedent's death was caused by the neglect of

appellee to guard the cogwheels. It is not enough to show negligence and the injury, but, in addition, the appellant must also show that appellee's negligence proximately caused Cruse's death. The decedent's right to damage, had he lived, was a common-law right, limited to the damage sustained, attributable to the negligence of the appellee. Appellant's right to recover, being statutory, depends upon whether her decedent could have maintained an action, had he lived, against appellee for a self-inflicted injury, as the active, operative, continuing, and the probable and natural sequence of the original injury." In the ninth paragraph of the syllabus in 88 N. E. 80, the following rule is announced: "Where the facts are undisputed, the question of proximate or intervening cause is for the court." It is also stated in the thirteenth paragraph of the syllabus in 88 N. E. 80: "In an action for the death of a servant, in which it was alleged that decedent received certain injuries on account of defendant's negligence; that these injuries produced insanity which produced death by suicide; evidence *held* to show that decedent's mind was capable of conceiving a purpose of taking life, as well as a knowledge of the means which would carry his purpose into effect, justifying a direction of a verdict for defendant."

The foregoing decisions are in all material respects parallel to the one at bar and fully sustain the action of the trial court in this case, and, if the rules laid down therein are followed by this court, it must result in the affirmance of the judgment herein. Counsel for plaintiff recognizes this, and, to avoid this result, strenuously insists that the holding of the supreme court of the United States in the *Scheffer* case is wrong and should not be followed. In his reply brief counsel says: "The supreme court of the United States, great as it is, is not authority on state cases and local laws. It is, of course, a pleasure to follow them when they are right; but when the reasoning, due to a misunderstanding of the science of the human body and mind, is erroneous, then state courts will point out the truth under newer science, and that great court

will later recognize its truth."

To sustain his contention that, under the allegations of the petition and the facts stated to the jury, which are admitted by the demurrer, the negligence of defendant was the proximate cause of the death of Long, counsel has cited numerous cases wherein it is held that one whose negligence causes injury to another, which injury produces or aggravates disease, is liable for damages to the injured party, or to his administrator for his death, resulting from said disease. The correctness of this rule seems to be recognized by practically all courts both state and federal. But these cases are clearly distinguishable from the *Scheffer* and kindred cases by the fact that in none of them did any voluntary act of the injured party, causing his death, intervene between the negligence and his demise, which act, such cases hold, is such a new and independent agency as to break the line of causation between the accident and the death. Among such cases cited in plaintiff's brief are several from the supreme courts of Massachusetts and Indiana. This indicates that said courts perceive no conflict between the rule laid down in those cases and the one announced in *Daniels v. New York, N. H. & H. R. Co.,* 183 Mass. 393, and *Brown v. American Steel & Wire Co.,* 43 Ind. App. 560, as both of said rules have been adopted by them.

Counsel has cited several cases, each of which was brought upon a saloon-keeper's bond by the widow of a man who committed suicide while under the influence of liquor sold him by the saloon-keeper, in which it is held that plaintiff was entitled to recover the damages sustained by herself and children in consequence of said death. These actions were brought under statutes which require a licensed dealer in intoxicating liquors to give a bond conditioned to pay all damages to any person who may be injured by reason of the selling or giving away any intoxicating liquor by the person licensed. Two of the cases so cited are from South Dakota. The liquor law of that state contains the following provision: "On the trial of any suit

under the provisions of this article, the cause and foundation whereof shall be the acts done or injuries inflicted by a person under the influence of liquor, it shall only be necessary to sustain the action, to prove that the defendant, or defendants, sold or gave away the liquors to the person so intoxicated or under the influence of liquor, whose acts or injuries are complained of, on that day or about that time when said acts were committed, or said injuries were received." *Palmer v. Schurz,* 22 S. Dak. 283. The distinction between actions brought under such liquor statutes and those brought under statutes similar to Lord Campbell's Act is too plain and obvious to require discussion.

The extensive research which it is evident counsel for plaintiff made in the preparation of his briefs did not enable him to cite a single case, brought under the statute of any state which gives a right of action for death by wrongful act, where plaintiff was permitted to recover damages resulting from the death of a party who committed suicide; nor has he cited any case wherein any court of last resort has disapproved or criticised the rule laid down by the United States supreme court in the *Scheffer* case, *supra,* and we have been unable to discover any such cases. On the contrary, said rule has been approved and adopted by the courts of several states. Therefore, notwithstanding the able and ingenious argument of plaintiff's counsel, we are constrained to hold that said rule is the correct one, and that it should be applied in the case at bar.

It appears, from the petition and the opening statement of plaintiff's counsel, that Mr. Long, with deliberate purpose, planned to take his own life; that he went to a hardware store, procured a shell to fit a shotgun which he had; that he carried said shell to his home, put it in the gun, and therewith shot and killed himself. All this points to his understanding of the physical nature and effect of his act, and to an intelligent and wilful purpose to accomplish it. There is nothing to show that he was acting without volition, under an uncontrollable impulse, or that he did not understand the physical nature of his act. This brings

the instant case squarely within the rule announced in the *Scheffer* and kindred cases, *supra*. It therefore follows that the trial court did not err in sustaining defendant's demurrer and dismissing the case; and that the judgment of the district court is right, and should be, and hereby is

Affirmed.