**Brett Coleman KIMBERLIN, Appellant–Defendant,**

v.

**Sandra Sue DeLONG, personal representative for Carl David DeLong, deceased, and Sandra Sue DeLong, Appellees–Plaintiffs.**

No. 2–384–A–72.

Court of Appeals of Indiana, Second District.

May 3, 1993.

Transfer Denied Aug. 20, 1993.

Arend J. Abel, Barnes & Thornburg, Indianapolis, for appellant-defendant.

Paula Thrun Kight, Indianapolis, for appellees-plaintiffs.

FRIEDLANDER, Judge.

CASE SUMMARY

Appellant-defendant Brett Coleman Kimberlin (Kimberlin) appeals from a jury verdict which awarded the plaintiff Sandra Sue DeLong (Sandra) $360,000 for injuries she sustained in an explosion allegedly caused by Kimberlin, and for a wrongful death claim she brought as personal representative on behalf of her husband, Carl David DeLong (Carl) [hereinafter collectively referred to as the DeLongs], claiming among other things, that the trial court erred in granting the DeLongs motion for partial summary judgment on the issue of liability, and that it was error to deny Kim-

berlin's motion to dismiss Sandra's wrongful death claim.

We affirm in part and reverse in part.

## FACTS

The facts most favorable to the judgment are that on September 6, 1978, Sandra and Carl were injured by an explosion which occurred at Speedway High School in Speedway, Indiana. The DeLongs were walking through the parking lot after leaving a football game. The explosive device was concealed in an abandoned gym bag. The bomb exploded as the DeLongs walked passed it. Carl and Sandra were seriously injured in the blast. Carl's right leg was nearly severed from the explosion. Physicians eventually amputated such leg above the knee; and a skin graft was performed and Carl was fitted with an artificial leg. Carl also was treated for a perforated eardrum. After Carl's wounds healed, he received physical therapy and learned how to walk with an artificial limb. While Carl's recovery proceeded remarkably well, pieces of shrapnel eventually worked their way to the surface of his skin. The shrapnel had to be surgically removed on a continuing basis. Carl also suffered from a pre-existing back injury which may have been aggravated by the use of the artificial limb.

Sometime in 1982, Carl became depressed. He had Vietnam "flashbacks," and resented wearing the artificial limb. On several occasions, Carl removed the limb, beat it on the ground, and told others that he hated it. He withdrew from his family, began drinking heavily, and marital difficulties developed with Sandra. On February 23, 1983, Carl committed suicide by carbon monoxide poisoning while sitting in his car. Carl left suicide notes to several members of his family.

Sandra's injuries were not as extensive as Carl's. A piece of shrapnel from the explosion severed an artery in her leg which caused injury and considerable pain. Sandra had surgery, and she spent almost two weeks in the hospital. She had physical therapy, and in January of 1979, Sandra walked without a limp and the pain had diminished; however, she still experienced some pain and numbness in her foot.

On February 28, 1979, a federal grand jury indicted Kimberlin for crimes including causing the explosion, for damaging property, and for injuring the DeLongs. Kimberlin was convicted on all counts. On September 4, 1980, the DeLongs filed an action against Kimberlin to recover damages for their injuries. On October 18, 1982, the DeLongs moved for partial summary judgment on the issue of liability. The DeLongs submitted certified copies of Kimberlin's indictment, verdict, and the judgment of conviction from the criminal trial, claiming that the convictions conclusively established Kimberlin's liability. (The DeLongs did not submit a transcript of the criminal trial). Kimberlin submitted affidavits to the court on November 20, 1982, and on September 22, 1983, denying under oath that he placed the explosive device that injured the DeLongs. The affidavit submitted by Kimberlin's criminal defense counsel September 22 alleged that the issues of the injuries to the DeLongs and causation thereof were not addressed at the criminal trial. On September 28, 1983, the DeLong's motion for partial summary judgment was granted and trial was scheduled to proceed on the damages claim.

On the morning of trial, Sandra moved for leave to amend the complaint to add a wrongful death count. Kimberlin moved to strike this amendment on the grounds that Carl's suicide was an intervening cause as a matter of law. The trial judge permitted Sandra to amend her complaint and add the count for wrongful death, and the court also granted Kimberlin's motion in limine as to evidence of Carl's pain and suffering. Throughout the trial, however, several witnesses testified as to Carl's pain and suffering over Kimberlin's continuing objection.

Kimberlin moved for a mistrial on the grounds that the evidence of Carl's pain and suffering was improperly admitted, and he moved for a directed verdict claiming that Carl's suicide was a superseding intervening cause. Both motions were denied and following the trial, the jury award-

ed Sandra personally $360,000 for the injuries she sustained in the explosion, and to Sandra, as personal representative, $1,250,000 on the wrongful death claim.

## ISSUES

In light of our disposition of this case, we need address only the following issues:[1]

1. Did the trial court properly grant summary judgment in favor of the DeLongs on the issue of liability?

2. Was Carl's suicide a superseding intervening cause which defeated Sandra's claim for wrongful death?

## DECISION

■ *ISSUE ONE*—Did the trial court properly grant the DeLongs' motion for partial summary judgment?

*PARTIES' CONTENTIONS*—Kimberlin argues that his submission of affidavits denying that he placed the explosive device which injured the DeLongs, and an affidavit submitted by his counsel that the issues of the injuries and causation to the DeLongs were not addressed at trial, created a genuine issue of material fact, and the trial court's reliance upon Kimberlin's criminal conviction as a conclusive presumption of liability in this civil matter was erroneous. Sandra responds that the grant of partial summary judgment was proper because Kimberlin admitted being convicted of the charged criminal offense, and that conviction conclusively established civil liability.

*CONCLUSION*—The trial court properly entered partial summary judgment in Sandra's favor.

The trial court's order entered on October 13, 1983 provided in pertinent part that:

"7. That the factual issues raised on the question of the liability of the defendant, Brett C. Kimberlin, for the injuries to the plaintiffs, Carl David DeLong and Sandra Sue DeLong, are substantially

similar to the factual issues which were tried in the United States District Court for the Southern District of Indiana on the defendant's Indictment under Cause No. IP79-7-CR, and therefore there exists no genuine issue of material fact on the issue of liability of the defendant, Brett C. Kimberlin, for the injuries to the plaintiffs Carl David DeLong and Sandra Sue DeLong.

8. That Indiana Code 34-3-18-1 which became effective September 1, 1982, is applicable to this case."

*Record* at 719-20.

When the trial judge entered summary judgment for the DeLongs, he relied upon Ind.Code 34-3-18-1 which provides that:

"Evidence of a final judgment, entered after a trial or upon a plea of guilty, adjudging a person guilty of a crime punishable by death or imprisonment in excess of one [1] year, shall be admissible in any civil action to prove any fact essential to sustaining the judgment, and is not excluded from admission as hearsay regardless of whether the declarant is available as a witness. The pendency of an appeal may be shown but does not affect the admissibility of evidence under this section."

Our supreme court recently granted transfer in *Hawkins v. Auto-Owners Ins. Co.* (1993), Ind., 608 N.E.2d 1358, and determined that the trial court acted properly in admitting the transcript of a defendant's attempted murder trial into evidence in a subsequent civil trial. In *Hawkins*, the decedent's guardian brought suit against the defendant who was previously convicted of attempted murder, claiming that the defendant *negligently* shot the victim. The defendant was insured by Auto-Owners, and such policy contained a clause which precluded coverage for the insured's deliberate acts. The trial court examined the transcript and determined that Auto-Owners was not responsible under the insurance policy because the action of the

---

1. Kimberlin also raises the following issues that we need not address: 1. The trial court abused its discretion in allowing the DeLongs to amend their complaint to include a wrongful death claim on the morning of damages-only trial and in denying Kimberlin's motion for a continuance to prepare for and to respond to this theory, and 2. that the trial judge improperly admitted evidence of Carl's pain and suffering as to the wrongful death claim.

defendant had been adjudicated to be deliberate. While the trial court denied Auto–Owners' motion for summary judgment and concluded that a genuine issue of material fact existed as to whether Stephens' actions were intentional, the judge nonetheless entered judgment for Auto–Owners after considering the transcript of evidence from Stephens' criminal trial.

On appeal, this court reversed and determined that it was error for the trial court to have admitted the transcript and the judgment of conviction of the prior criminal proceeding into evidence at the subsequent civil trial in light of existing Indiana law.[2]

Our supreme court in *Hawkins* recognized that "both the federal jurisdiction and our legislature have viewed the rule to cause a conflict within the judicial system and to create an intolerable situation." *Id.* at 1359. In affirming the trial court's entry of judgment, Justice Givan, in writing for the majority, observed that:

> "On the one hand, we have a criminal trial where the rules of evidence are more stringent than in a civil case and where a person has been adjudicated to have deliberately committed an act, and on the other hand, a subsequent civil trial holding that this same act is readjudicated to have been accidentally committed."

*Id.*

The majority determined that the admissibility of Stephens' transcript and criminal conviction pursuant to IC 34–3–18–1 *conclusively* resolved the insurance exclusion interpretation, and a final judgment was properly entered without affording Hawkins the opportunity to present any evi-

dence at a trial. While the majority observed that the transcript of Stephens' criminal trial had been presented to the trial court, this was not the paramount factor, inasmuch as the *Hawkins* court focused on the prior *adjudication* of the issue of fact in the criminal proceeding when it affirmed the entry of judgment in Auto–Owners' favor.

The record before us demonstrates that the trial court was presented with the indictment, verdict, and judgment of conviction of Kimberlin's prior criminal proceeding. Even though Kimberlin provided the court with affidavits stating that he did not plant the explosive device which injured the DeLongs, and that the issue of the injuries to the DeLongs and the causation thereof were not addressed in the criminal proceeding, the trial judge was entitled to rely upon the documents made available to him from the prior federal criminal proceeding in deciding whether or not to grant summary judgment on the issue of liability. Just as in *Hawkins,* where the trial judge could determine whether the shooting by the defendant was deliberate or accidental, the trial judge here could rely upon the documents provided to him from Kimberlin's prior criminal proceeding to determine whether he was civilly liable in light of the previous criminal conviction.[3]

While the dissent aptly points out that the transcript of the criminal trial was admitted into evidence at the civil proceeding in *Hawkins,* and IC 34–3–18–1 provides that a final judgment of a felony conviction is merely *admissible* to prove any fact essential to sustain a judgment, the majority in *Hawkins* apparently went beyond the

---

**2.** Prior to the supreme court's decision in *Hawkins* which adopted Federal Rule of Evidence 803(22), a judgment of conviction in a criminal prosecution was not admissible in a civil case for the reason that the provisions of I.C. 34–3–18–1 which allowed such evidence directly conflicted with the supreme court's rules expressly forbidding the admission of that evidence. *See Brooks v. State* (1973), 259 Ind. 678, 291 N.E.2d 559; *Montgomery v. Crum* (1928), 199 Ind. 660, 161 N.E. 251.

**3.** While this court is bound to follow the law announced by the majority opinion in *Hawkins,* we observe that Justice Dickson's separate opin-

ion has some merit. He suggested that the trial court exceeded its broad discretion in summarily entering a final judgment in favor of Auto–Owners (the criminal defendant's insurance company) without holding a trial when the record clearly reflected that a genuine issue of material fact existed as to the defendant's intent. *See Hawkins, supra,* at 1361.

The plain language of I.C. 34–3–18–1 provides that the existence of a criminal conviction may be admissible as relevant evidence in a subsequent civil proceeding which in no way implies that a conclusive presumption is established.

scope of IC 34–3–18–1. It clearly determined that the criminal conviction conclusively resolved the issue of the defendant's intent in the subsequent civil proceeding. *Hawkins* holds that the existence of a criminal conviction prevents the relitigation of the issues in a related civil matter so as to avoid the possibility of reaching a contrary result.

In light of *Hawkins,* the trial judge acted properly in determining that no genuine issue of material fact existed regarding Kimberlin's liability for the DeLongs' injuries. Partial summary judgment entered in favor of the DeLongs was proper.

■ *ISSUE TWO*—Was Carl's suicide a superseding intervening cause which defeated Sandra's claim for wrongful death?

*PARTIES' CONTENTIONS*—Kimberlin contends that Carl's suicide which occurred more than four years after the explosion was an intervening cause as a matter of law because the suicide was not shown to be the result of an insane frenzy or uncontrollable impulse caused by Carl's injuries, and further, the trial court's denial of Kimberlin's motion to dismiss, for judgment on the evidence, and for a directed verdict on the wrongful death count was erroneous. Sandra responds that Carl's suicide was a direct and proximate result of the injuries he sustained in the explosion, and she is therefore entitled to recover on the wrongful death claim.

*CONCLUSION*—The trial court erred in permitting Sandra to recover on the wrongful death claim.

In considering whether one may recover damages under the wrongful death statute when a suicide occurs, this court announced the following:

"In cases resting on the statute there must appear to be something more than an unsound mind, though it be caused by mental disease as a sequence of the injury inflicted by reason of the negligent act or omission of the defendant. If the decedent at the time of taking his life had mind enough to know what he wanted to do, and how to do it, the line of causation from the accident to the death would be broken by the act of suicide, and the latter would be the proximate cause of his death. *From the cases bearing upon the subject now being considered the rule seems to be that an action under the statute may be maintained when the death is self-inflicted, only where it is the result of an uncontrollable influence, or is accomplished in delirium or frenzy, caused by the defendant's negligent act or omission, and without conscious volition of a purpose to take life; for then the act would be that of an irresponsible agent."*

*Brown v. American Steel & Wire Co.* (1909), 43 Ind.App. 560, 571–22, 88 N.E. 80 at 85; *see also Riesbeck Drug Co. v. Wray* (1942), 111 Ind.App. 467, 39 N.E.2d 776, *trans. denied.*

In *Riesbeck,* this court went on to say that:

"[I]f the new independent intervening force was not reasonably foreseeable at the time of the defendant's wrongful conduct, the consequences, ordinarily, are not caused proximately by the original wrongful act. Where the intervening force is a deliberate act of a human being which was in no sense foreseeable by the defendant at the time of his misconduct, the chain of causation is broken.

*The voluntary, willful act of suicide of an insane person, who knows the purpose and physical effect of his act, is such a new and independent agency as will not come within and complete a line of causation from a defendant's alleged negligent act...."*

*Riesbeck, supra* at 478, 39 N.E.2d at 780–81 (emphasis supplied).

At trial, the only evidence presented regarding the purported cause of Carl's suicide was testimony from members of his family. Sandra testified that she believed Carl's suicide was a result of the injuries sustained in the explosion:

"Because of the way that he was the last year when he couldn't accept the injuries and [sic] longer and [sic] he had before. He said what had happened had happened and it wouldn't do him any good to bear a grudge or try to get back at anybody for doing it. But in the last year, he talked about it a lot. How he

wished there was some way he could get back at the person who had been responsible for doing that to him. And he did bear a lot of animosity towards this person at that time when he really didn't talk about it a whole lot before. He often made references to the fact that he didn't want to have to go through life like that. And that he wasn't getting any better and that he was going to lose his other leg. And he had not been that way before. He never said in so many words that he would do away with himself. But he seemed a lot more careless in his driving and things than he had seen before. And he did—he didn't take care of himself physically like he had been. He didn't eat right and he—he kept going when he should have been restin' and he stayed up all night and he knew that made his leg hurt words [sic] but he didn't seem to care. He said, well it's going to hurt anyway so what difference does it make. So, he just—in general he just didn't have a good outlook like he had had."

*Record* at 1202.

The DeLongs' children also testified regarding Carl's suicide. Deanna, a daughter of Carl and Sandra testified that approximately six months before the suicide, Carl "talk[ed] about how much he hated his leg and that he wished he had died in '78." *Record* at 1317–18. Deanna went on to say that:

"I believe he committed suicide because he had lost his leg and he could not handle that fact any more. He was a very, very active person prior to this accident and he did not know how to cope with it. With not being as active as he was by means other than his own."

*Record* at 1320.

Steven, Carl's son, testified that Carl "told [him] that he would rather not be alive. He said that he would rather die than lose both legs because he couldn't be what he was." *Record* at 1330.

The testimony quoted above indicates that Carl had become despondent over his injuries. He left suicide notes to various family members. None of the letters mentioned the artificial limb, his injuries, or the explosion.[4]

Carl had poisoned himself with carbon monoxide as he sat in his automobile, while

4. The notes were coherent, and they were not indicative of "the result of an uncontrollable influence, or [that the suicide was] accomplished in delirium or frenzy. . . ." *See Brown, supra,* 43 Ind.App. at 572, 88 N.E. at 85. The handwritten notes provided in their entirety as follows:

"Sandy,
I am going to write several thing's that may not make sense. But I'm trying to do my best, whatever you think of me or don't think of me. I want you to know that I do love you. I love DeDe Steve Eddy & Melissa very much. This sound's like an easy way out but it's not.
I have done you so many misjudgement's and I don't know how else to set it straight. Don't think of me to bad, because I am not all that tough or bad. Sometimes people that live together take each other for granted. I guess that's the way I have been doing to you. I don't have any real explanation for my actions and I don't expect you to understand them. Please try to love me a little.
          LOVE YOU    David
                    (over)
You have been a wonderful wife and Mother and I know I don't deserve you and you sure didn't deserve me.
I STILL LOVE YOU"
*Record* at 1197, 98.

"Melissa,
One day your Mom and Grand Ma will tell you about me. I hope that when you grow older your Mom and Dad will read this to you. Melissa I love you like I do some little blonde headed girl that your Grand Mother and I knew when she was little, your Mother.
          *Your Grand Pa"*
*Record* at 1199.
"Eddy,
Take care of DeDe and Melissa, just use your common sense and you will be allright. Take care Ed.
          David"
*Record* at 1200.
"DeDe,
I know what you think of me, and I am sorry for that. Don't ever cut your self short. Take care of Melissa and every now and then give Eddy a prod not to hard, but gently. DeDe I'm sorry everything turned out this way. I really and truly did not want it to. In one way or another just try to love me a little.
          I will always be your
Dad"
*Record* at 1201.
"Steve,
Just want you to understand son. I don't know, what to really say except, Steve I am very

**52**

it was running, in his garage. *Record* at 1191.

While we sympathize with the DeLongs, the evidence presented demonstrates that Carl "had a mind capable of conceiving a purpose of taking his life, as well as a knowledge of the means which would certainly carry his purpose into effect." *Brown,* 43 Ind.App. at 573, 88 N.E. at 85. In accordance with *Brown* and *Riesbeck,* the trial court should have directed a verdict for Kimberlin on Sandra's representative claim for wrongful death.

The trial court's judgment is affirmed with respect to the grant of Sandra's motion for partial summary judgment on the issue of liability, but we reverse the verdict entered in her favor as representative on the wrongful death claim and vacate the award of damages as to that claim.

SHIELDS, J., concurs with opinion.

SULLIVAN, J., concurs in part and dissents in part with opinion.

SHIELDS, Judge, concurring.

I fully concur in the opinion authored by Judge Friedlander because it applies the law stated in *Hawkins v. Auto–Owners Insurance Co.,* Ind., 608 N.E.2d 1358. However, I also want to acknowledge the logic of Judge Sullivan's position "that the statute [IC 34–3–18–1] permits a felony judgment merely as evidence of disputed facts in a civil proceeding as opposed to conclusive establishment of the fact."

SULLIVAN, Judge, concurring in part and dissenting in part.

I fully concur in the majority's reversal of the judgment upon the wrongful death claim. I dissent, however, from the affirmance of the partial summary judgment as to liability.

Indiana Code 34–3–18–1, in effect at the time of the 1982 partial summary judgment proceeding, provided and still provides that a final judgment for a felony conviction "shall be admissible ... to prove...." It does not state that such judgment in and of itself establishes liability. In this regard, it is my view that the majority today errs in attributing to *Hawkins v. Auto–Owners Insurance Co.* (1993) Ind., 608 N.E.2d 1358, a holding that such a criminal judgment, under the statute "conclusively re-solve[s]" the civil question.

My dissent is set forth with full recognition of the principle that retroactive application of a rule of evidence, as contained in *Hawkins, supra,* is appropriate in this case. *See Farm Bureau Mutual Insurance Co. v. Dercach* (1983) 3rd Dist. Ind. App., 450 N.E.2d 537. Furthermore, it is not essential to my view that Kimberlin here was not afforded an opportunity to submit facts in contravention of the "fact" of liability. *See Hawkins, supra,* (DeBruler, J. and Dickson, J. dissenting). Rather, my dissent is premised upon the following: (1) that the statute permits a felony judgment merely as evidence of disputed facts in a civil proceeding as opposed to conclusive establishment of the fact; (2) the absence of *any* evidence from the criminal proceeding with respect to the elements necessary for civil recovery;[1] and (3) the related premise that absent any such evidence, the matter of proximate causation has not been shown.

As suggested by the majority and as per the affidavits of Kimberlin, proximate causation is not reflected in the documents which were submitted to the civil court from the criminal proceeding. This is so even if we were to consider the conclusory allegation in the criminal charge that Kimberlin "maliciously damag[ed] and destroy[ed], by means of an explosive, real

proud of you and I hope you never make the mistakes that your Dad has. Forgive me please Steve, take care of your Mother she need's you very much.

Love Ya,
Dad

P.S. Keep on with your band one of these days you will make it."

*Record* at 1196.

---

1. In *Hawkins, supra,* the transcript of evidence from the criminal proceeding was before the civil court so as to provide factual predicate for the ultimate conclusion reached in the criminal case. No evidence in the criminal proceeding was submitted to the civil court here.

and personal property ... and which explosive resulted in personal injuries ...", (Record at 604) together with a conviction upon that count.

I do not express an opinion as to whether "proximate causation" in a civil setting is identical with "resulted in personal injuries" in a criminal setting. Suffice it to say that I believe an uncertainty in this regard militates against a summary judgment as to liability.

The judgments should be reversed in all respects and the cause remanded for trial upon Sandra's claim for personal injuries.