CITY OF INDIANAPOLIS, Appellant,

v.

Richard L. SWANSON, Appellee.

No. 583S164.

Supreme Court of Indiana.

May 10, 1983.

Rehearing Denied July 1, 1983.

John P. Ryan, Corp. Counsel, City of Indianapolis, David F. McNamar, Michael R. Franceschini, Steers, Sullivan, McNamar & Rogers, Indianapolis, for appellant.

C. Warren Holland, Holland & Tabor, Charles G. Reeder, Stewart & Reeder, Indianapolis, for appellee.

PIVARNIK, Justice.

This cause comes to us on a Petition to Transfer from the Fourth District Court of Appeals. Said Petition was brought by Defendant-Appellant City of Indianapolis (hereinafter "the City"). Plaintiff-Appellee Richard Swanson originally brought this personal injury action against the City alleging that the City's negligence in erroneously signing a roadway curve caused him to be injured in an automobile accident. A Marion Circuit Court jury found the City negligent and awarded Swanson $185,000. The trial judge entered judgment on the verdict. The City appealed to the Fourth District contending that certain of the trial court's evidentiary rulings were contrary to law and therefore represented an abuse of discretion. The City also challenged the propriety of some of the trial court's jury instructions. The Fourth District found no reversible error and affirmed the trial court. We now find the Fourth District and the trial court in error in several respects and accordingly vacate the opinion of the Court of Appeals, 436 N.E.2d 1179 (Ind. App.1982) and reverse the trial court.

During the early morning hours of May 25, 1975, Richard Swanson and passenger Anita Karto were traveling in an automobile along Sargent Road in suburban Indianapolis. Although the weather was clear and dry, it was dark and Swanson was unfamiliar with the roadway. A warning sign along Sargent Road showed a left reverse curve warning of a curve to the left and then to the right. Actually, the initial curve to the left was very slight and the more significant curve was sharply to the right and then to the left. Swanson drove his car to the left as he approached the curve to the right and traveled through a fence, striking an apple tree. His head hit the steering wheel and passenger Karto received various bruises and contusions. Swanson claims in this suit that he has suffered *grand mal* epileptic seizures, de-

pression and a personality disorder as a result of his accident. The City raised ten issues for review on appeal. We now consider only the following issues in which we find reversible error:

1. whether the trial court abused its discretion by limiting the scope of the City's cross-examination of Swanson; and

2. whether the trial court abused its discretion by refusing to permit two of the City's witnesses to testify.

I

During its cross-examination of Swanson, the City attempted to introduce evidence that while selling illegal drugs to Officer Thomas Breen, Swanson told Breen that his injuries were fraudulent and made other statements which conflict with his direct testimony and with the testimony of his other witnesses. Specifically, the City sought to question Swanson about a conversation he allegedly had with Breen on March 16, 1979. The trial court consistently rebuffed each attempt to introduce this testimony claiming that its relevance was so grossly outweighed by its prejudicial character as to be unfair and inadmissible. The majority of the Fourth District agreed with the trial court and affirmed the exclusion of this evidence. We agree, however, with dissenting Judge Young who found that the trial court abused its discretion by limiting the City from cross-examining Swanson about his dealings with and his statements to Breen.

The City's counsel, Attorney McClelland, sought to lay a proper foundation for his examination of Swanson in regard to Breen. The trial judge prevented him from doing so, however, as the following excerpt from the record of this case reveals:

"[MR. McCLELLAND:] On March 16, 1979 at the International Harvester Bar did you represent to Thomas Breen—
MR. HOLLAND [Swanson's counsel]: Your Honor, I am going to object and then we have just got to have some rules on this—
THE COURT: Mr. McClelland, we are going to get into some reprimands here.

MR. HOLLAND: May we approach the bench, Your Honor?

THE COURT: I'm going to let the Jury out of here for a minute.

THE COURT ADMONISHES THE JURY

THE JURY LEAVES THE COURT-ROOM

THE COURT: Mr. McClelland, we have been walking into a mistrial here for three days and you're right on the brink of it and Tom Breen, as I know, (this is on the record) is a narcotic man. I've signed many search warrants for him and if you've got any arrests and convictions of narcotics they are not even admissible. Now let's get that straight. We've been skating on thin ice for three days here. Now if you want to go down the tube, that's entirely up to you. But, stay off of it and that's it.

THE COURT: Mr. McClelland, I want to apologize for getting a little shook up there but just a few moments before that you said that you weren't going to get into this. I happen to know who Tom Breen is. I happen to know the purpose for which you were bringing it up and as I said yesterday morning prior to starting this trial if you guys want to try a criminal case go down to Criminal One, Two, Three or Four.

MR. McCLELLAND: It was not my intention to bring up any statements with respect to the things we talked about. I had other—

THE COURT: I haven't sat here for almost three days to go into a mistrial at this stage of the game. I thought we'd be in one before noon yesterday and I'm not going to tolerate that.

MR. McCLELLAND: I understand.

THE COURT: You just stood up here a few minutes before and said that you weren't going to do that.

MR. McCLELLAND: And I wasn't—

THE COURT: But you did it. When we had our little conference here, you said that you weren't going to do it and then you started out with this watering hole business and the International Bar out there and Tom Breen. I happen to know who Tom Breen is. I've signed many search warrants for him on narcotics. So we're going to try a civil suit here and I'm not going to tell you how to try it but we're going to try a civil suit here. We're not going to try a criminal case. If you want to try a controlled substance case why (sic) you go down to Criminal Court and do it. I'm not going to have to sit all day long and admonish this Jury and get placed in the trick bag and I think that's what you're trying to do to me. All right bring the Jury in.

JURY COMES INTO OPEN COURT."

The City therefore made the following offer of proof:

"MR. McCLELLAND: Were Officer Breen permitted to testify, he would testify in substance as follows: On March 16, 1979, he purchased from Richard Swanson marijuana in the amount of thirty five dollars. On March 23, 1979, he also purchased marijuana from Richard Swanson in the amount of one hundred dollars. If he again were permitted to testify, Officer Breen would testify that Richard Swanson told him that he took a physical for the Indiana State Highway Commission for the purposes of failing that physical for the purposes of this trial here this week and today. Additionally, he would testify, if he were permitted to, that Mr. Swanson told him he did not suffer from seizures, that he could not take a job until this trial was over and that any cash that he received had to be in cash so that there were no record (sic) of any money that he received. Additionally, he indicated to Officer Breen that he sold drugs before, had a supplier and that he could get him whatever he needed. We think that goes into to rebut the testimony of Richard Swanson about the nature of the sources of his income and that is relevant. The fact that he chooses to make this money from an illegal transaction does not shield him from our having the opportunity to get in that and show what in fact he does. And, that is our offer to prove."

We find Swanson's alleged statements to Officer Breen relevant to the issues before the trier of fact since the statements were in direct conflict with Swanson's testimony and went to the very heart of his claim against the City. Swanson claimed that the City's negligence caused his accident resulting in *grand mal* epilepsy and personality changes which prevented him from a normal life and from making a living. It is significant that the record shows conflict in the evidence as to whether or not Swanson had *grand mal* epilepsy. Dr. Rehn testified that Swanson did not have trauma induced epilepsy but rather hyperventilation syndrome. He further testified that the electroencephalograms (EEG) of Swanson's brain activity did not conclusively indicate epilepsy. In contrast, Dr. Fisher testified that Swanson suffered from *grand mal* epilepsy. He stated, however, that his opinion was based upon the facts Swanson personally related regarding his purported seizures. Fisher admitted that he never witnessed Swanson have a seizure and therefore was not absolutely certain of Swanson's condition. He also admitted that Swanson's EEG was not conclusive because a person having the abnormality thereby depicted might not have seizures while a person having an EEG without such abnormality might have them. These are matters of conflict in the evidence which are within the sovereign domain of the trier of fact to determine. Our standard of review does not pertain to such conflicts of fact and we do not consider them in making legal determinations such as those now called for. The conflict in the instant case, however, should nonetheless be counted as having rendered the statements Swanson allegedly made to Breen, as suggested by the City's offer of proof, relevant and especially significant to the trier of fact. We believe that Judge Young accurately appraised this case when he wrote in his dissenting opinion:

"This evidence was probative of a major disputed question of fact and not unduly prejudicial. The probative value of Breen's testimony outweighed any prejudicial effect."

We do not doubt that any testimony regarding Swanson's alleged statements to Breen would have been prejudicial to Swanson's case. The statements purportedly were, after all, Swanson's own and in direct conflict with the position Swanson sought to advance in court. The trial court has the discretion to determine the scope of a cross-examination and only a clear abuse of that discretion warrants reversal. *Schalkle v. State,* (1979) Ind., 396 N.E.2d 384; *Ringham v. State,* (1974) 261 Ind. 628, 308 N.E.2d 863; *Brooks v. State,* (1973) 259 Ind. 678, 291 N.E.2d 559. Such determinations by the trial court necessarily entail making judgments on the admissibility of controversial evidence. The Court of Appeals properly stated that the trial judge's specific duty is to weigh the probative force of any evidence sought to be introduced against the danger of prejudice, in consideration of those trial conditions and circumstances which the trial judge can observe. *Smith v. Crouse-Hinds Co.,* (1978) 175 Ind. App. 679, 373 N.E.2d 923, *trans. denied,* (1979) Ind., 392 N.E.2d 1168. We will reverse the trial court only when the trial court's judgment is clearly against the logic and effect of the facts and circumstances before the trial court. *McFarlan v. Fowler Bank City Trust Co.,* (1938) 214 Ind. 10, 12 N.E.2d 752; *see also: Carroll v. Lordy,* (1982) Ind.App., 431 N.E.2d 118; *Williams v. Trowbridge,* (1981) Ind.App., 422 N.E.2d 331.

We now find that the action of the trial court in excluding evidence of Swanson's statements to Breen was clearly against the logic and effect of the facts and circumstances before the trial court in the instant case. Even though said statements would tend to show that Swanson was a drug dealer and had committed unproven crimes, the statements nonetheless were allegedly made by Swanson and were inconsistent with the prior statements he made about his physical condition and his loss of income due to the contested accident. This Court has held that a trial court may not properly deny the cross-examination of a party concerning facts connected with that

party's own acts and statements relating to the case which tend to impair that party's credibility. *Walker v. State,* (1963) 244 Ind. 258, 191 N.E.2d 488, *reh. denied; see also: Bewley v. State,* (1966) 247 Ind. 652, 220 N.E.2d 612; *Guise v. State,* (1977) 171 Ind. App. 680, 359 N.E.2d 269. Accordingly, we now hold that the trial court abused its discretion by limiting the scope of the City's cross-examination of Swanson.

## II

Two witnesses offered by the City in its case-in-chief were excluded from testifying by the trial judge. These witnesses were Thomas Breen, the narcotics officer, and Officer Royce Cole. We already have discussed the substance of Breen's testimony. Although there was a question pertaining to Breen and to certain other witnesses regarding the City's alleged failure to furnish certain witness lists to Swanson during discovery, Breen was not excluded by the trial court for this reason. Breen's testimony was excluded because the trial court deemed it prejudicial and misleading. For the reasons expressed above, we find that the trial court erred by excluding Breen's testimony. The City attempted to lay a proper foundation for Breen's testimony by its cross-examination of Swanson, which was refused by the trial court. The City then attempted to bring Breen forward to personally present this evidence to the jury but again was refused. The City was therefore required to go to the jury with the issues in this case without being permitted to present to the jury this very significant evidence.

Officer Royce Cole was called to testify in regard to the testimony of Mrs. Aloma Karto regarding Swanson's belligerent and violent behavior at her home. Aloma Karto was the mother of Anita Karto, Swanson's girlfriend and passenger in the instant accident. The purpose of Mrs. Karto's testimony was to show the change in Swanson's personality following his injuries. She testified that previous to Swanson's accident and injury, Swanson was a kind and friendly person who did not act violently against her daughter or anyone else in her presence. Mrs. Karto further testified that following his injuries, Swanson's personality changed and he became short-tempered, belligerent and violent, at times physically pushing Anita around. Mrs. Karto illustrated her testimony by relating two separate incidents when Swanson's conduct so threatened Anita that the police were called to remove Swanson. Mrs. Karto specifically described a violent encounter on January 29, 1977, with Swanson, Anita and Mrs. Swanson's gentleman friend who attempted to intervene and protect Anita. Her testimony was that Swanson did not appear to be suffering from drug or alcohol abuse and that she did not smell alcohol on his breath. The City indicated in its offer of proof that if Officer Cole were permitted, he would testify that he responded to Mrs. Karto's call for help and went to her home on January 29, 1977. He further would testify that when he took Swanson away, Swanson smelled strongly of alcohol, had impaired speech and staggered. Cole's testimony therefore would have tended to show that Swanson's conduct was not the result of any seizure or personality change but was because he was intoxicated. Since Swanson first offered testimony about the incident, it was proper for the City to call a witness to proffer a contrary version of said incident. Once again the City was required to go to the jury without the jurors having any knowledge of these facts so that they might appraise the credibility of the witnesses and make a determination of the incident in a fully informed manner. The trial court abused its discretion and committed reversible error on this issue.

Several other issues representing reversible error were raised by the City and discussed by both the majority and dissenting opinions of the Court of Appeals. These issues include whether the trial court erred by admitting at trial evidence of the City's subsequent remedial actions and whether the trial court erred by tendering certain final instructions to the jury. Since it does not appear that any of these issues neces-

sarily will arise in the same manner during the retrial of this cause, we do not think it necessary to discuss them in detail here.

The opinion of the Court of Appeals is vacated and the trial court is reversed with instructions to grant the City a new trial.

GIVAN, C.J., and DeBRULER, HUNTER and PRENTICE, JJ., concur.