U.S. District Court
No. 84-385

## DONALD A. MAYER, SR., ADMINISTRATOR OF THE ESTATE OF DONALD A. MAYER, JR.

v.

## TOWN OF HAMPTON & a.

August 7, 1985

*Law Office of Gerald F. Giles*, of Portsmouth (*Gerald F. Giles* and *Harriet J. Fishman* on the brief, and *Ms. Fishman* orally), for the plaintiff.

*Law Offices of Kenneth G. Bouchard P.A.*, of Manchester (*Mark L. Mallory* and *Carol L. Hess* on the brief, and *Mr. Mallory* orally), for the defendants Town of Hampton and Craig Liatsis, George R. Gurick, Jr., and Dennis G. Pelletier.

*Devine, Millimet, Stahl & Branch P.A.*, of Manchester (*Donald E. Gardner* and *Douglas N. Steere* on the brief, and *Mr. Gardner* orally), for the defendants Craig Liatsis, George R. Gurick, Jr., and Dennis G. Pelletier.

DOUGLAS, J.   In this case we are asked to answer two questions certified by the United States District Court for the District of New Hampshire (*Loughlin*, J.) pursuant to Supreme Court Rule 34. These questions relate to whether New Hampshire law recognizes an exception to the general rule that a plaintiff may not maintain a tort action that seeks damages resulting from the suicide of another. We answer that the law in this State does recognize such an exception under certain circumstances.

The questions certified by the district court are:

"1. Does New Hampshire law recognize as valid the exception to the general rule which says tort actions seeking damages for the suicide of another can be maintained where the defendant is found to have actually caused the suicide?

2. Assuming question #1 is answered in the affirmative, could the exception as defined by the Court apply to the facts as alleged in plaintiff's complaint or are defendants entitled as a matter of law to dismissal of the wrongful death action?"

These questions arise from the following facts and allegations. On or about September 13, 1981, the plaintiff brought his son, the plaintiff's intestate, to reside at Hampton, New Hampshire, soon after the son's discharge from the Augusta, Maine Mental Health Institution. The son was twenty-one years old at that time. On October 30, 1981, the plaintiff's son lost his way while walking from his home to the beach. While lost, he was picked up by a Mr. George Bouras who assisted the plaintiff's intestate in reaching home. Mr. Bouras thereafter notified the Hampton and State police of the plaintiff's intestate's condition, his lack of knowledge of the area, and his inability to give clear responsive answers to the questions put to him.

At approximately 12:15 p.m. that day, the defendants, Officers Craig Liatsis and George R. Gurick, Jr., and Sergeant Dennis G. Pelletier, acting in their official capacities as officers of the Hampton Police Department, entered the plaintiff's intestate's home without a search warrant. They proceeded to force him down to the floor. They then pointed and maintained a revolver upon his head, threatening to kill him or others found in the house. When they found no other person in the house, the officers arrested the plaintiff's intestate, took him into custody, and brought him to the Hampton police station. After a short investigation, he was released. On October 31, 1981, approximately sixteen hours after his release, the plaintiff's intestate committed suicide by stabbing himself repeatedly.

The plaintiff filed suit in the United States District Court on behalf of his intestate, against the Town of Hampton and the three town police officers, officially and individually, asserting a wrongful death claim arising from an alleged violation of 42 U.S.C. § 1983. Also included in the complaint are counts alleging false arrest, false imprisonment, and assault and battery under the substantive law of New Hampshire. The defendants moved to dismiss all counts, arguing that there is no action for wrongful death at common law and that only actions pursuant to the relevant sections of RSA chapter 556, the wrongful death statute, survive plaintiff's intestate's suicide. They argue that intentional torts resulting in suicide are not among the actions included in that statute. They further argue that, since a wrongful death action arising from a violation of 42 U.S.C. § 1983 is not a cause of action created by RSA chapter 556, that claim is also barred. The plaintiff objected, claiming that his action survives because he has asserted claims pursuant to RSA 556:12 and because 42 U.S.C. § 1983 extends to wrongful death claims.

We begin our analysis by stating the underlying assumptions with which we approach these questions. The defendants apparently argue that the § 1983 claim is dependent upon the existence of a tort

under State law. We recognize that this United States District Court has found a cause of action when a decedent committed suicide while in custody of State officials, *Lightbody v. Town of Hampton*, No. 82-277-D (D.N.H. July 31, 1984), so that the § 1983 action appears to be separate from State claims. We intend to express no opinion on this issue, however. Whether the conduct of the officers deprived the plaintiff's decedent of rights, privileges or immunities secured by the Federal Constitution or the laws of the United States so as to state a cause of action under 42 U.S.C. § 1983, *Parratt v. Taylor*, 451 U.S. 527 (1981), is a federal question more appropriately answered in this case in the federal court. We address the certified questions with the understanding that the plaintiff has raised State tort claims, independent of the § 1983 action, which are within the province of this court to decide.

The issue properly before this court is whether New Hampshire recognizes an exception to the general rule that tort actions may not be maintained which seek damages for the suicide of another. Early cases denied recovery for wrongful death by suicide on the basis that suicide, apparently as a matter of law, is an intervening, independent agency which breaks the causal connection between the wrongful or negligent act and the death. *See, e.g., Scheffer v. Railroad Co.*, 105 U.S. 249 (1882); *Salsedo v. Palmer*, 278 F. 92 (2d Cir. 1921); *Brown v. American Steel, etc.*, 43 Ind. App. 560, 88 N.E. 80 (1909).

This court recently had occasion to discuss, although we did not decide, this issue in *McLaughlin v. Sullivan*, 123 N.H. 335, 461 A.2d 123 (1983). In that case we recognized that some jurisdictions have articulated two exceptions to the general rule, so that recovery for wrongful death by suicide may be possible where: (1) the defendant actually caused the suicide; or (2) the defendant had a duty to prevent the suicide from occurring. *Id.* at 337–38, 461 A.2d at 124–25; *see* Schwartz, *Civil Liability for Causing Suicide: A Synthesis of Law and Psychiatry*, 24 VAND. L. REV. 217 (1971).

It was alleged in *McLaughlin* that the defendant, an attorney, negligently represented her client and that this negligent representation resulted in his wrongful conviction and ensuing suicide. We found that the professional negligence complained of in that case could never be fairly viewed as fitting within either of the two already articulated exceptions and further found no basis on the facts to formulate a third exception. It was therefore not necessary in that case to determine whether there are any circumstances under which a wrongful death cause of action lies for suicide. The facts in the case before us, however, are more analogous to those in the cases from other jurisdictions which have held that a defendant

may be liable for the suicide of another where his intentional torts substantially caused the death. In answer to the certified questions, we must now decide whether New Hampshire similarly recognizes such an exception under the facts of this case.

The plaintiff, as the administrator of the estate of his deceased son, brings his State claims under RSA 556:12. That statute provides:

> "Damages for Wrongful Death, Elements. If the administrator of the deceased party is plaintiff, *and the death of such party was caused by the injury complained of in the action*, the mental and physical pain suffered by the deceased in consequence of the injury, the reasonable expenses occasioned to his estate by the injury, the probable duration of his life but for the injury, and his capacity to earn money during his probable working life, may be considered as elements of damage in connection with other elements allowed by law, in the same manner as if the deceased had survived."

(Emphasis added.)

By the language of the statute, there is a cause of action for wrongful death if the death is caused by the wrongful or negligent act of the defendant. In the present case, the plaintiff has alleged three intentional torts: false imprisonment, assault and battery, and false arrest, each of which he claims led to the death of his-decedent. We must therefore turn to the law of intentional torts to determine whether, on the facts of this case, the acts of the defendants could have caused the plaintiff's decedent to take his own life.

The law of torts recognizes that a defendant who intentionally causes harm has greater culpability than one who negligently does so. *Shades, etc. v. Cobbs, Allen & Hall Mortg.*, 390 So.2d 601, 609 (Ala. 1980); *State ex rel. Richardson v. Edgeworth*, 214 So.2d 579, 587 (Miss. 1968); RESTATEMENT (SECOND) OF TORTS § 435A, § 435B, § 435B comment a (1975). When the wrong alleged is intentional, the defendant "is responsible for the injuries directly caused even though they may be beyond the limits of foreseeability," proof of which is required in a negligence action. *Cauverien v. DeMetz*, 188 N.Y.S.2d 627, 632 (N.Y. Sup. Ct. 1959). In most cases of intentional torts "[t]he defendant's liability for the resulting harm extends . . . to consequences which the defendant did not intend, and could not reasonably have foreseen, upon the obvious basis that it is better for unexpected losses to fall upon the intentional wrongdoer than upon the innocent victim." W. PROSSER & W. KEETON, THE LAW OF TORTS § 9, at 40 (5th ed. 1984) (footnote omitted); *Watson v.*

*Rheinderknecht*, 82 Minn. 235, 84 N.W. 798 (1901). With regard to intentional torts, § 435A and § 435B of the Restatement (Second) of Torts relate to causation and liability.

> "A person who commits a tort against another for the purpose of causing a particular harm to the other is liable for such harm if it results, whether or not it is expectable, except where the harm results from an outside force the risk of which is not increased by the defendant's act."

RESTATEMENT (SECOND) OF TORTS § 435A (1965).

> "Where a person has intentionally invaded the legally protected interests of another, his intention to commit an invasion, the degree of his moral wrong in acting, and the seriousness of the harm which he intended are important factors in determining whether he is liable for resulting unintended harm."

RESTATEMENT (SECOND) OF TORTS § 435B (1965).

Under these sections, liability for unintended resulting harm is based upon proof of the tortfeasor's wrongful intent, and consideration of the degree of moral wrong and the seriousness of the harm which he intended. Consideration of these factors, as opposed to the foreseeability of the harm as in negligence actions, is consistent with the policy behind imposing liability for intentional torts: compensating the victim and deterring intentional harm to others. *Shades, etc., supra* at 611; *see Briere v. Briere*, 107 N.H. 432, 434, 224 A.2d 588, 590 (1966).

Regarding the degree of causation necessary to find liability, courts which have held that a defendant may be liable for the suicide of another as a result of his wrongful conduct have determined that the intentional torts must have been a substantial factor in creating the mental condition which led to the decedent's suicide.

> "Consequently, we believe that, in a case where the defendant intended, by his conduct, to cause serious mental distress or serious physical suffering, and does so, and such mental distress is shown by the evidence to be 'a substantial factor in bringing about' the suicide, a cause of action for wrongful death results, whether the suicide was committed in a state of insanity, or in response to an irresistible impulse, or not."

*Tate v. Canonica*, 180 Cal. App. 2d 898, 909, 5 Cal. Rptr. 28, 36 (1960) (citation omitted); *accord State ex rel. Richardson, supra* at 568 ("the defendants' intentional conduct is a legal cause of harm to plaintiffs if their individual acts were substantial factors in bring-

ing about the harm."); *see also Cauverian v. DeMetz*, 188 N.Y.S.2d at 632.

We adopt the reasoning of these courts and add a requirement regarding the conduct of the defendant. Given the necessity in intentional tort suicide cases of considering the effect of the tort upon the mental state of the victim, it has been suggested that "[l]iability for suicide caused by intentional misconduct is best explained as an extension of the recognized tort liability for intentional infliction of mental distress." Comment, *Civil Liability for Suicide: An Analysis of the Causation Issue*, 1978 ARIZ. ST. L. J. 573, 576. The Restatement (Second) of Torts § 46(1) defines liability for infliction of severe emotional distress:

> "One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm."

*See State Rubbish etc. Assn. v. Siliznoff*, 38 Cal. 2d 330, 240 P.2d 282 (1952). Because a cause of action for the intentional commission of a wrongful act upon another which causes emotional distress resulting in suicide is analogous to the tort of intentional infliction of severe emotional distress, we find that it is appropriate to require proof of extreme and outrageous conduct on the part of a defendant in the former type of action as well as the latter.

Based on the foregoing discussion, we hold that in order for a cause of action for wrongful death by suicide to lie for intentional torts, the plaintiff must demonstrate that the tortfeasor, by extreme and outrageous conduct, intentionally wronged a victim and that this intentional conduct caused severe emotional distress in his victim which was a substantial factor in bringing about the suicide of the victim. Proof of the substantial causation will usually be based on expert testimony. Further, the fact that a decedent has a history of mental instability is no automatic bar to finding the defendant's conduct to be a substantial factor in causing the suicide.

The defendant's actions in the wrongful death suicide will oftentimes be the precipitating cause or the "straw that broke the camel's back." So long as the defendant's wrongful act was a substantial cause of the suicide, there is no reason in such a case to undermine the policy behind intentional torts which extends a defendant's liability almost without limit to any actual harm resulting. *Civil Liability for Suicide, supra* at 613. *Cf. New Hampshire Supply Co. v. Steinberg*, 119 N.H. 223, 400 A.2d 1163 (1979) (fact

that decedent had previously weakened or diseased heart did not prevent his family from collecting on workers' compensation claim so long as employment-related stress substantially contributed to heart attack).

We note that in distinguishing between proof of causation for intentional torts and for negligence in the foregoing discussion, we express no opinion as to whether *negligence* actions for wrongful death by suicide may be maintained in New Hampshire. Although other states have so found, *see, e.g., Orcutt v. Spokane County*, 58 Wash. 2d 846, 364 P.2d 1102 (1961), that issue is not presented in this case.

■■ Therefore, we answer the district court's certified questions as follows:

1. New Hampshire law does recognize an exception to the general rule that there is no cause of action for wrongful death by suicide, where the conduct of the defendant was an intentional tort and extreme and outrageous, and where this conduct caused severe emotional distress on the part of the victim which was a substantial factor in bringing about the victim's ensuing suicide.

2. This exception could apply to the facts of the case as alleged in the plaintiff's complaint, so that the defendants are not entitled as a matter of law to dismissal of the wrongful death action.

*Remanded.*

BROCK, J., filed a separate response; the others concurred.

BROCK, J., responding separately: In my view the pleadings which are the basis for the present certification of issues to this court by the United States District Court for the District of New Hampshire, in their present form, raise only questions of federal law and thus I respectfully decline to respond to the questions certified.