Brett Coleman KIMBERLIN, Appellant
(Defendant Below),

v.

Sandra Sue DeLONG, Personal Representative for Carl David DeLong, Deceased, and Sandra Sue DeLong, Appellees (Plaintiffs Below).

No. 49S02–9406–CV–524.

Supreme Court of Indiana.

June 13, 1994.

Rehearing Denied Dec. 15, 1994.

122

David F. Hamilton, Barnes & Thornburg, Indianapolis, for appellant.

Paula Thrun Kight, Indianapolis, for appellees.

## ON PETITION TO TRANSFER

DICKSON, Justice.

Following the trial court grant of plaintiffs-appellees' motion for partial summary judgment on the issue of liability, a jury trial resulted in judgments against defendant-appellant Brett Coleman Kimberlin in the sum of $360,000 for personal injuries to Sandra Sue DeLong and $1,250,000 for the wrongful death of Carl David DeLong. The Court of Appeals affirmed the partial summary judgment and the judgment for Sandra DeLong's injuries, but reversed the wrongful death judgment, holding that Carl DeLong's suicide was an intervening cause as a matter of law. *Kimberlin v. DeLong* (1993), Ind.App., 613 N.E.2d 46.

Appellant Kimberlin's Petition to Transfer asserts in part that the Court of Appeals erred in giving his prior criminal conviction conclusive effect to establish his civil liability as a matter of law. We grant transfer.

As a general rule, when transfer is granted, the entire opinion of the Court of Appeals is vacated, except those portions expressly adopted or summarily affirmed by this Court. Ind.Appellate Rule 11(B)(3).[1] Upon the grant of transfer, the appeal is fully before this Court, and we therefore face all of the issues originally raised before the Court of Appeals. In his appeal from the trial court judgment, Kimberlin has claimed various errors related to the following issues:

1. the partial summary judgment finding civil liability conclusively established by proof of a criminal felony final judgment pursuant to Ind.Code § 34-3-18-1;

2. the refusal to consider suicide as an intervening cause as a matter of law to preclude the wrongful death action;

3. the granting of the plaintiff's motion to amend her complaint just prior to the commencement of trial to add a claim for wrongful death, and the refusal to grant the defendant a continuance;

4. the admission of evidence of the decedent's pain and suffering; and

5. the extent of the damages.

This lawsuit arises from an explosion on September 6, 1978.[2] Sandra and Carl DeLong were injured while walking through the Speedway High School, Speedway, Indiana, parking lot after leaving a football game when a bomb concealed in an abandoned gym bag exploded. The DeLongs sought damages for their resulting injuries in a civil damage action alleging that Kimberlin manufactured, placed, or caused to be placed a homemade explosive device with the intent to cause severe bodily injury. Record at 12, 741. In 1981, Kimberlin was convicted, after jury trial in the United States District Court for the Southern District of Indiana, of, *inter alia*, maliciously damaging and destroying, by means of an explosive, real and personal property and causing personal injury to the DeLongs in the incident. The DeLongs

1. To express approval of all or a portion of an opinion of the Court of Appeals, our practice is to grant transfer and declare it "adopted" or "expressly adopted and incorporated by reference." In contrast, we state that a portion of the Court of Appeals opinion is "summarily affirmed" to indicate that we are declining to review certain issues, in essence a partial denial of transfer.

2. The unusual delay in this case results from the intervening trial and appellate proceedings related to the resolution of Kimberlin's attempt to initiate this appeal at public expense. The praecipe for the record was timely filed February 13, 1984, but pursuant to enlargements of time granted to the defendant, the Record of Proceedings was not filed until July 27, 1990.

thereafter moved for partial summary judgment on the issue of Kimberlin's liability, submitting certified copies of Kimberlin's indictment, verdict, and judgment of conviction from the criminal trial. Kimberlin responded by submitting sworn affidavits denying that he placed the explosive device which injured the DeLongs. Carl DeLong committed suicide on February 23, 1983. The trial court thereafter granted the partial summary judgment motion. On the morning of the damages-only trial, October 18, 1983, the trial court granted Sandra DeLong's motion to amend the complaint against Kimberlin, converting the cause of action for Carl DeLong's injuries to an action for his wrongful death and denied Kimberlin's motion for a continuance.

### 1. Use of Criminal Conviction to Establish Civil Liability

#### (a). Conclusiveness

■ Kimberlin contends that the trial court erroneously granted the DeLongs' motion for partial summary judgment by misconstruing Ind.Code § 34-3-18-1 to provide that evidence of a prior criminal felony final judgment creates a conclusive and irrebuttable presumption of liability in a civil proceeding. In relevant part, the statute provides:

> Evidence of a final judgment, entered after a trial or upon a plea of guilty, adjudging a person guilty of a crime punishable by death or imprisonment in excess of one [1] year, shall be admissible in any civil action to prove any fact essential to sustaining the judgment, and is not excluded from admission as hearsay regardless of whether the declarant is available as a witness.

Ind.Code § 34-3-18-1.

Kimberlin urges that the plain language of this statute merely provides that evidence of a criminal felony final judgment should be admissible in a civil action to prove any fact essential to sustaining the judgment, but that such evidence is not, *per se,* conclusive proof of any such fact. Plaintiff-appellee DeLong argues that the phrase "to prove" in the statute should be interpreted to mean unambiguously that admission of evidence of a criminal judgment renders such evidence as conclusive proof of a fact essential to sustaining the civil judgment.

In *Hawkins v. Auto-Owners Ins. Co.* (1993), Ind., 608 N.E.2d 1358, this Court unanimously ruled that, notwithstanding prior case law, we will apply the rule expressed in Ind.Code § 34-3-18-1 "which allows the admission of a criminal judgment as evidence in a civil case." *Id.* at 1359. This view comports with the majority of jurisdictions in the United States and Fed.R.Evid. 803(22), subsequently adopted as Ind.Evid. R. 803(22). *Id.* We reaffirm this principal premise of *Hawkins* permitting the admissibility of evidence of a felony conviction in a civil trial.

However, the majority opinion in *Hawkins,* by implication and without express discussion, also affirmed the civil trial court's use of the criminal trial transcript (not just the final judgment) and entry of final judgment without further evidence at trial. Upon these issues, this Court was not unanimous. Upon further consideration, we today retreat from our implied holdings in *Hawkins* regarding the conclusiveness of the judgment and the admissibility of the criminal trial transcript. Thus, while a criminal felony judgment may be admitted in evidence, such conviction is not necessarily conclusive proof in the civil trial of the factual issues determined by the criminal judgment, and the evidence transcript is not necessarily admissible.

#### (b). Retroactivity

■ Kimberlin separately contends that it was error to retroactively apply Indiana Code § 34-3-18-1 to authorize consideration of his federal criminal conviction. He argues that the 1982 statute should not apply to the use of a 1981 federal criminal conviction in the trial of lawsuit filed in 1980 based upon a 1978 incident. DeLong responds that the plaintiffs' motion for partial summary judgment was filed after the effective date of the statute which she contends is procedural rather than substantive and thus retroactive to all actions pending at the time of the statute's effective date.

Conceding that new procedural rules and rules of evidence can generally be applied retroactively to pending cases, Appellant's Brief in Support of Petition to Transfer at page 9, Kimberlin argues that such retroactive application is improper when in the nature of a conclusive presumption, citing *Collwell v. Bedford Stone & Constr. Co.* (1920), 73 Ind.App. 344, 349, 126 N.E. 439, 441. Because we have narrowed the holding in *Hawkins* to eliminate the use of Ind.Code § 34-3-18-1 to create an automatic presumption, Kimberlin's objection to retroactivity is not compelling. It was not error for the trial court to apply the statute to the pending case to permit admission of the prior criminal conviction. It was a matter of procedural rather than substantive law.[3]

### (c). Collateral Estoppel

In granting partial summary judgment on the issue of liability, the trial court considered not only the Order of Judgment and Conviction from the federal criminal proceeding but also Kimberlin's affidavits in opposition to the motion. Noting the felony conviction, the trial court concluded that "there exists no genuine issue of material fact on the issue of liability of the defendant, Brett C. Kimberlin, for the injuries to the plaintiff's Carl David DeLong and Sandra Sue DeLong." Record at 720. On appellate review a trial court's judgment may be affirmed even if sustainable on grounds different from those reflected in the trial court's findings. *Douglass v. Irvin* (1990), Ind., 549 N.E.2d 368, 371; *Havert v. Caldwell* (1983), Ind., 452 N.E.2d 154, 157. Although the fact of criminal felony conviction is not necessarily conclusive, as noted in issue 1(a), *supra*, it may potentially provide a basis for the offensive use of collateral estoppel. It is upon this basis that we affirm the partial summary judgment.

Collateral estoppel may bar the subsequent re-litigation of the same fact or issue which was necessarily adjudicated in a prior lawsuit. *Sullivan v. American Casualty Co.* (1992), Ind. 605 N.E.2d 134, 137. Collateral estoppel is termed "offensive" when, as in the present case, the "plaintiff seeks to foreclose the defendant from litigating an issue the defendant has previously litigated unsuccessfully in an action with another party." *Parklane Hosiery v. Shore* (1979), 439 U.S. 322, 326 n. 4, 99 S.Ct. 645, 649 n. 4, 58 L.Ed.2d 552, 559 n. 4. Determining the appropriateness of offensive collateral estoppel involves two considerations: 1) whether the party in the prior action had a full and fair opportunity to litigate the issue and 2) whether it is otherwise unfair to apply collateral estoppel given the facts of the particular case. *Tofany v. NBS Imaging Sys., Inc.* (1993), Ind., 616 N.E.2d 1034, 1038.

Kimberlin's criminal trial in federal district court resulted in convictions later affirmed on appeal. *U.S. v. Kimberlin* (7th Cir.1986), 805 F.2d 210, *cert. denied* (1987), 483 U.S. 1023, 107 S.Ct. 3270, 97 L.Ed.2d 768. This clearly meets or exceeds the equivalence of a full and fair opportunity to litigate the facts determinative of his civil liability. Count 22 of the federal indictment charged that Kimberlin "did maliciously damage and destroy, by means of an explosive, ... personal injuries resulting therefrom to the persons of Carl David DeLong and Sandra DeLong...." Record at 616. The federal criminal charges were defended vigorously, and Kimberlin was found guilty beyond a reasonable doubt—a standard of proof granting him protection greater than the preponderance of evidence standard in the civil case. Under these circumstances, the application of collateral estoppel is not unfair. We conclude that it was correct to grant partial summary judgment establishing Kimberlin's liability.

**3.** Kimberlin has submitted *Landgraf v. USI Film Products*, (1994), —— U.S. ——, 114 S.Ct. 1483, 128 L.Ed.2d 229 as additional authority for his contention that Ind.Code § 34-3-18-1 ought not be applied retroactively. In *Landgraf* the United States Supreme Court held, as a matter of federal procedural law, that statutory creation of or changes in procedural law are subject to retroactive application; however, a provision attaching new legal consequences to events completed before its enactment, thus impairing rights a party possessed when he acted, increasing a party's liability for past conduct, or imposing new duties with respect to transactions already completed, may not be applied retroactively. Although not constitutionally binding upon the procedural law of Indiana, this federal approach is consistent with our holding today.

### 2. *Suicide as an Intervening Cause*

■ Citing precedent from our Court of Appeals, Kimberlin maintains that Carl De-Long's suicide, occurring more than four years after the explosion, was an intervening cause as a matter of law and that the trial court erred in denying his motions for dismissal, for judgment on the evidence, and for a directed verdict. He argues that the suicide was not the product of mental illness, insane frenzy, or uncontrollable or irresistible impulse. DeLong urges that while Indiana precedent may support Kimberlin, the relevant common law is in need of modification. DeLong posits that it is unnecessary to question the sanity or emotional state of a suicide victim or the reasonable foreseeability of the suicide when the injury inflicted by a tortfeasor is a substantial factor in bringing about the suicide.

Existing precedent in this state supports the general notion that a party may not recover damages under the wrongful death statute if the decedent at the time of his suicide "had mind enough to know what he wanted to do, and how to do it...." *Brown v. American Steel & Wire Co.* (1909), 43 Ind.App. 560, 571, 88 N.E. 80, 85. In such a situation, the line of causation from the accident negligently caused by the tortfeasor to the injured party's death would be broken by the suicide which would be deemed the proximate cause of death. *Id.* at 572, 88 N.E. at 85. Thus,

> an action under the statute may be maintained when the death is self-inflicted, only where it is the result of an uncontrollable influence, or is accomplished in delirium or frenzy, caused by the defendant's negligent act or omission, and without conscious volition of a purpose to take life; for then the act would be that of an irresponsible agent.

*Id.* at 572, 88 N.E. at 85. Similarly,

> [t]he voluntary, willful act of suicide of an insane person, who knows the purpose and physical effect of his act, is such a new and independent agency as will not come within and complete a line of causation from a defendant's alleged negligent act....

*Riesbeck Drug Co. v. Wray* (1942), 111 Ind. App. 467, 478, 39 N.E.2d 776, 780–81. We note, however, that this precedent arises in civil damage actions alleging negligent rather than intentional conduct.

In determining whether to allow a victim's subsequent suicide to insulate a wrongdoer from liability for his actions, other jurisdictions and authorities have distinguished between defendants whose actions were merely negligent and those whose conduct was intentional.

> The rule that to render one liable for an injury to another resulting from a wrongful act, the injury must have been the proximate consequence of such act, which is applied strictly where the act or omission resulting in the injury is merely negligence, is relaxed in its application so as to cover a wider field of resulting injuries where the act is a wilful or malicious tort, as distinguished from mere negligence.

74 Am.Jur.2d Torts § 27, 642–43. Additionally, "[i]n respect of wilful acts, there is authority for the rule that persons may be held liable for the consequences that flow therefrom as a proximate cause thereof, whether they could have been foreseen or anticipated or not." *Id.* at § 28, 643. "The defendant's interests have been accorded substantially less weight in opposition to the plaintiff's claim to protection when moral iniquity is thrown into the balance." W. Page Keeton *et al.*, *Prosser and Keeton on The Law of Torts* § 8, at 37 (5th ed. 1984). Liability for intentional torts extends beyond foreseeability because "it is better for unexpected losses to fall upon the intentional wrongdoer than upon the innocent victim." *Id.* § 9, at 40. Moreover, "[i]n cases involving unlawful acts, intervening causes are especially likely not to be held to preclude liability of the wrongdoer." 74 Am.Jur.2d § 29, 644.

Concerning intentional torts, the Restatement (Second) of Torts §§ 435A and 435B address causation and liability.

> A person who commits a tort against another for the purpose of causing a particular harm to the other is liable for such harm if it results, whether or not it is expectable, except where the harm results from an outside force the risk of which is not increased by the defendant's act.

Restatement (Second) of Torts § 435A (1965).

> Where a person has intentionally invaded the legally protected interests of another, his intention to commit an invasion, the degree of his moral wrong in acting, and the seriousness of the harm which he intended are important factors in determining whether he is liable for the resulting unintended harm.

Restatement (Second) of Torts § 435B (1965).

The rule has therefore emerged that the doctrine of superseding cause is inapplicable to willful torts. Gregory G. Sarno, Annotation, *Liability of One Causing Physical Injuries as a Result of Which Injured Party Attempts or Commits Suicide*, 77 A.L.R.3d 311, 349 (1977). In accordance with general authority, the proximate causation concept of superseding causes thus is discarded in favor of a cause-in-fact test. *Id.* at 317.

> This transposition has the effect, on the issue of civil liability for suicide, of obviating the need for the court's queries into the sanity of the tort victim and into the reasonable foreseeability of his suicidal acts. The question becomes, simply, whether the wilful tortfeasor's injury was a substantial factor in bringing about the tort victim's suicide or suicide attempt.

*Id.* Section 442B of the Restatement (Second) of Torts provides:

> Where the negligent conduct of the actor creates or increases the risk of a particular harm and is a substantial factor in causing that harm, the fact that the harm is brought about through the intervention of another force does not relieve the actor of liability, except where the harm is intentionally caused by a third person and is not within the scope of the risk created by the actor's conduct.

Restatement (Second) of Torts § 442B (1965). Comment b to § 442B further clarifies as follows:

> If the actor's conduct has created or increased the risk that a particular harm to the plaintiff will occur, and has been a substantial factor in causing that harm, it is immaterial to the actor's liability that the harm is brought about in a manner which no one in his position could possibly have been expected to foresee or anticipate.... This is to say that any harm which is in itself foreseeable, as to which the actor has created or increased the recognizable risk, is always "proximate," no matter how it is brought about, except where there is such intentionally tortious or criminal intervention, and it is not within the scope of the risk created by the original negligent conduct.

*Id.* at cmt. b.

Examples of this refusal to treat suicide as an independent intervening cause are found in cases arising in Pennsylvania, New Hampshire, and California. "While there is some uncertainty with respect to acts of negligence, it is plain that where suicide results from an intentional wrong, 'the trend of recent cases is toward allowing recovery.'" *Rowe v. Marder* (W.D.Pa.1990), 750 F.Supp. 718, 723–24, *quoting* 1 Stuart M. Speiser, Wrongful Death 85 (1975 and 1989 Supp.). New Hampshire has recognized a wrongful death action involving a decedent's suicide following his alleged false imprisonment, assault and battery, and false arrest. *Mayer v. Town of Hampton* (1985), 127 N.H. 81, 497 A.2d 1206. Citing policy favoring the imposition of such liability for intentional torts as "compensating the victim and deterring intentional harm to others," *Id.* at 86, 497 A.2d at 1210, the court recognized "an exception to the general rule that there is no cause of action for wrongful death by suicide where the conduct of the defendant was an intentional tort and extreme and outrageous, and where his conduct caused severe emotional distress on the part of the victim which was a substantial factor in bringing about the victim's ensuing suicide." *Id.* at 88, 497 A.2d at 1210, 1211. Similarly, California has permitted a wrongful death action to proceed where defendants allegedly intentionally caused serious physical and mental disturbance which was a substantial factor in bringing about the victim's suicide. *Tate v. Canonica* (1960), 180 Cal.App.2d 898, 5 Cal.Rptr. 28.

In the present case, the complaint alleged intentional injury. Kimberlin's federal criminal conviction, through collateral estoppel,

discussed in Issue 1(c), *supra*, establishes his conduct as malicious and thus intentional rather than negligent. Moreover, Carl's DeLong's death, although occurring more than four years after the explosion, was within the scope of harm intended by Kimberlin's intentional criminal conduct. Under such circumstances, we decline to treat suicide as independent intervening cause protecting a highly culpable defendant from liability for his victim's death. We hold that an action may be maintained for death or injury from a suicide or suicide attempt where a defendant's willful tortious conduct was intended to cause a victim physical harm and where the intentional tort is a substantial factor in bringing about the suicide.

### 3. Amendment of Complaint and Refusal to Grant Continuance

■ Kimberlin asserts that the trial court abused its discretion by permitting the plaintiff on the morning of the damages-only trial to amend her complaint by adding a count of wrongful death. Kimberlin claims that this amendment created serious prejudice because the suicide had not previously been an issue and had not been the subject of discovery. Kimberlin contends that the trial court also erred by refusing to grant his motion for continuance. At trial, to the extent that his continuance motion related to the amended complaint, Kimberlin sought the continuance only "in order to respond—prepare and file responsive pleadings to the amended Count III. Both procedurally and as a substantive answer." Record at 823.

DeLong counters that Ind.Trial Rule 15 permits amendment of pleadings as a matter of trial court discretion. DeLong emphasizes that the added wrongful death count properly allowed the complaint to conform to the evidence to be presented and that the suicide was a compensable result of her husband's injuries.

■ Consistent with an underlying purpose to facilitate decisions on the merits and to avoid pleading traps, the Indiana Trial Rules generally implement a policy of liberal amendment of pleadings, absent prejudice to an opponent. *Harp v. Indiana Dep't of Highways* (1992), Ind.App., 585 N.E.2d 652,

658. A trial court is given broad discretion in this area, and "[a]mendment is permissible even during trial, 'regardless of whether a change in the cause of action might result.' " *Indiana High Sch. Athletic Ass'n, Inc. v. Schafer* (1992), Ind.App., 598 N.E.2d 540, 555, *quoting Palacios v. Kline* (1991), Ind. App., 566 N.E.2d 573, 576. A trial court will be reversed only for abuse of discretion and will be affirmed if there is any rational basis for its decision. *Id.* As with amendment of pleadings, a trial court's ruling on a motion for continuance will be reviewed only to determine whether there has been an abuse of discretion. *Farm Bureau Mut. Ins. Co. v. Dercach* (1983), Ind.App., 450 N.E.2d 537, 539. A trial court's denial of a motion for continuance will not be disturbed unless the movant can demonstrate that he was prejudiced by the denial. *Id.*

In the present case, the suicide occurred approximately eight months before trial. The defendant received formal notice of DeLong's death approximately five months before trial in plaintiffs' motion for substitution. Record at 659. For the 28 months preceding the death, the parties were proceeding to trial in a cause of action that included Carl DeLong's claim for severe, multiple, and permanent injuries from the bomb blast including "virtual disintegration of the lower right leg; extensive soft tissue loss of the left leg; multiple fragment wounds to the scrotum, abdomen, right hand, face and neck; [and] a perforated right ear drum," as well as lost wages from inability to work and the claim that DeLong "will ultimately be unable to work." Record at 13. We also observe that this case had been pending over three years by the time of trial and that litigation of this cause had been exceptionally protracted, involving numerous discovery disputes, requests for protective orders, motions for sanctions, contempt proceedings, and motions for continuances, as evidenced by over 700 pages of pre-trial record exclusive of depositions.

We recognize Kimberlin's appellate assertion that the amendment of the complaint and denial of a continuance presented him with difficulties in defending "against the new allegation that the injuries caused the

suicide." Reply Brief of Appellant in the Court of Appeals at 15. However, considering Kimberlin's failure to articulate specific prejudice to the trial judge, his extensive opportunity to fully prepare for substantially all of the damage issues encompassed in the wrongful death action, and the circumstances faced by the trial judge in light of acrimonious litigation and repeated delays, we decline to find an abuse of discretion by the trial court in permitting the amendment of the complaint and denying the continuance.

### 4. Evidence of Decedent's Pain and Suffering

 The defendant contends that the trial court erred in admitting testimony regarding Carl DeLong's pain, suffering, and disfigurement, and that his motion for a mistrial should have been granted. However, he does not claim trial court error in overruling of any motions to strike a witness's response, nor does he even assert having made any such motions. The plaintiff replies that witnesses were never asked to describe the decedent's pain and suffering but only to describe his injuries.

 Both parties agree that under the wrongful death and survival statutes applicable at the time of the trial, the decedent's pain and suffering were not recoverable items of damage. Apart from the issue of damages, however, we note that such evidence may be relevant to show the causal connection between the defendant's deliberate tortious conduct and the subsequent suicide. A trial court, in considering the admission of controversial evidence, must weigh the probative force of any evidence sought to be introduced against the danger of prejudice. *City of Indianapolis v. Swanson* (1983), Ind., 448 N.E.2d 668, 671. We will reverse the trial court only when its judgment is clearly against the logic and effect of the facts and circumstances before the trial court. *Id.*

 In reviewing each example cited by the defendant as objectionable, we do not find the trial court's rulings to have been clearly contrary to this standard. While the witnesses' responses in some instances contained information regarding the decedent's suffering, there were neither contemporaneous motions to strike such testimony nor requests for jury admonishment. A party cannot claim error in the trial court's failure to take action when he fails to make the motions which would have given the court an opportunity to act. *Goodpaster v. State* (1980), Ind., 402 N.E.2d 1239, 1241. Moreover, such testimony was clearly relevant to the issue of whether the defendant's intentional tort was a substantial factor in bringing about the decedent's suicide. We therefore decline to find error on this issue.

### 5. Damages

The defendant contends that the verdicts were excessive as a matter of law. He argues that neither bore a rational connection to the evidence at trial and could only have resulted from jury passion and prejudice.

As to the wrongful death verdict, the defendant asserts that DeLong's economic loss, "on a continuing basis, could have been no more than $50,000 per year" and that "the present value of the economic loss would have been less than $800,000." Appellant's Appellate Brief at 43. The plaintiff responds that as to the wrongful death case, the evidence supports medical expenses of $35,656.57, funeral and burial expenses of $4,182.35, and loss of prospective income and benefits of over $1,000,000. She also notes that damages may be awarded for the loss of the care, love and affection, and training and guidance that would have been provided by the deceased.

 Appellate courts defer to jury latitude in making damage award determinations. *FMC Corp. v. Brown* (1990), Ind., 551 N.E.2d 444, 450. To warrant reversal, the amount of damages "must appear to be so outrageous as to impress the court at 'first blush' with its enormity." *New York Cent. R.R. Co. v. Johnson* (1955), 234 Ind. 457, 466, 127 N.E.2d 603, 608. A wrongful death verdict will be considered excessive only if it is so outrageous as to indicate passion, prejudice, or partiality rather than reasoned assessment. *FMC Corp.*, 551 N.E.2d at 451; *Dunkelbarger Constr. Co. v. Watts* (1986), Ind.App., 488 N.E.2d 355, 359.

Carl DeLong, 44 years of age at the time of his death, had been married to Sandra, then 43, for 23 years. The couple had one son, then age 18, who lived in the DeLong home, and a married daughter, approximately 22 and the mother of the DeLongs' grandchild. A Vietnam War veteran, DeLong had been employed for 17 years at Detroit Diesel Allison Division of General Motors Corporation, most recently as a parts inspector, and was a captain in the United States Army Reserves. Proof of damages offered at trial included medical expenses of $35,656.57 and funeral and burial expenses of $4,132.85. His annual income in 1982, the year preceding his death, totalled approximately $31,500.00 in addition to non-wage benefits valued at $4.75 per working hour. Evidence also indicated that his projected annual retirement income at age 65 would have been $21,480.00.

Considering these circumstances, the jury finding of damages in the amount of $1,250,-000.00 does not appear outrageous at first blush. The verdict does not indicate passion, prejudice, or partiality rather than reasoned assessment. We decline to find the wrongful death judgment to be excessive.

As to the damages awarded for Mrs. DeLong's separate personal injury claim, the defendant asserts that the $360,000 verdict was approximately 18 times her special damages and therefore excessive. In response, the plaintiff notes evidence demonstrating the particularly painful nature of her injuries from the bomb blast and her ordeal during treatment, including multiple surgeries and permanent continuing pain and impairment established by medical testimony.

A personal injury award is not excessive where (1) the award was not based upon jury prejudice, partiality, or corruption, (2) the jury has not misunderstood or misapplied the evidence, (3) the award was not based upon consideration of an improper element such as liability insurance, and (4) the award was within the parameters of the evidence. *Martin v. Roberts* (1984), Ind., 464 N.E.2d 896, 905. Under such circumstances, we will not substitute our judgment for that of the jury as to reasonable compensation for a plaintiff. *Id.; see, e.g., Weaver v. Gullion*

(1983), Ind., 446 N.E.2d 605 (affirming verdict approximately 15 times the $8,000 special damages). In the present case we find no basis for finding the verdict for Mrs. DeLong's injuries to be excessive as a matter of law.

*Conclusion*

Transfer is granted. The judgment of the trial court is affirmed.

SULLIVAN, J., concurs.

DeBRULER, J., concurs in Parts 1(a), 3, 4, and 5 and, although concurring in result, declines to join in Parts 1(b), 1(c), and 2.

GIVAN, J., dissents as to Issue 1(a) but otherwise concurs, and files separate opinion concurring and dissenting.

SHEPARD, C.J., concurs in result with separate opinion in which GIVAN, J., concurs.

GIVAN, Justice, concurring and dissenting.

Although I concur with the majority opinion in its affirmance of the trial court, I respectfully dissent from the dictum in the majority opinion limiting the application of *Hawkins v. Auto–Owners Ins. Co.* (1993), Ind. 608 N.E.2d 1358. The majority's observations concerning *Hawkins* are not necessary to the decision in this case. I do not agree with the majority's observations; the *Hawkins'* case was decided correctly.

SHEPARD, Chief Justice, concurring in result.

To the casual reader, this case may seem to present a dispute about whether the victims of Brett Kimberlin's violence will be compensated by receiving the proceeds of his upcoming book. For the present parties, that is a very important question.

For the rest of Indiana's residents, however, the dictum in Justice Dickson's opinion represents an effort to use this case as a vehicle for quite a different agenda: formulating a policy about who should pay for violent crime.

When the perpetrator of a crime is found guilty beyond a reasonable doubt of intentionally inflicting injury on his victim, should the costs of that injury be paid by the perpetrator? Or should the costs be borne by thousands of law-abiding citizens through their own insurance premiums? Insurance contracts containing clauses denying coverage for intentional acts (like Kimberlin's bombing) are designed to keep the rest of us from paying for acts intended by their perpetrators. Such clauses represent a respectable policy concerning allocation of responsibility: criminals like Kimberlin pay for their crimes, and law-abiding persons are still protected by their insurance when they negligently cause damage or injury.

Justice DICKSON's opinion represents a very different judicial policy. It contemplates two trials with rather different results. In the first trial, the jury finds the defendant guilty of intentional crime, and he is convicted and/or incarcerated. Such was the case of Brett Kimberlin. In the second trial (a trial on insurance coverage or victim compensation) the jury would be entitled to find that the perpetrator did not intend to harm his victim. The perpetrator would still be in jail notwithstanding the fact that the second jury found he did not intend his crime, but he would be shielded financially by this second verdict.

A judicial policy which promotes two trials on the same issue, contemplates conflicting outcomes, and apportions financial responsibility for crimes to law-abiding policyholders is not a very attractive policy. Moreover, the dictum on this subject is especially superfluous in a case where it is clear that the victims can receive compensation from the actual perpetrator.

GIVAN, J., joins in this opinion.